THE STATE, EX REL. SZEKELY, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as State, ex rel. Szekely, v. Indus. Comm., 15 Ohio St. 2d 237.]

(No. 68-126—Decided July 24, 1968.)

238

Messrs. Everett & Blair and Messrs. Smart & Smart, for appellee.

Mr. William B. Saxbe, attorney general, Mr. Walter J. Howdyshell and Mr. Robert J. Dodd, Jr., for appellant.

TAFT, C. J. In rendering its judgment the Court of Appeals apparently disregarded that part of Section 4123.68(W), Revised Code (formerly Section 1465-68a, General Code), which reads:

"Compensation and * * * expenses on account of silicosis are payable * * * only in the event of such disability or death resulting within eight years after the last injurious exposure. In the event of death following con-

tinuous total disability commencing within eight years after the last injurious exposure, the requirement of death within eight years after the last injurious exposure does not apply."

Furthermore, under *State, ex rel. Bessler,* v. *Indus. Comm.* (1952), 157 Ohio St. 297, 105 N. E. 2d 264, the corresponding portion of that statute, as in effect prior to October 12, 1945 (having the words "two years" where the words "eight years" now appear), would impose a limitation on the existence of the death claim asserted in the instant case. Unlike in *State, ex rel. Venys,* v. *Indus. Comm.* (1950), 153 Ohio St. 238, 91 N. E. 2d 7, the eight-year version of that statute did not become effective until more than two years after decedent's last injurious exposure to silica dust.

Admittedly, decedent's last exposure to any silica dust was on January 16, 1943, which was 15 years before decedent's death in 1958, at the age of 70.

Under the specific provisions of the applicable version of that statute, no compensation for death on account of silicosis could be paid unless decedent's death occurred prior to January 16, 1945 (last exposure in 1943 plus two years), or unless the decedent was continuously and totally disabled from silicosis from January 16, 1945, until his death. Even if we should overrule our decision in *State, ex rel. Bessler,* v. *Indus. Comm., supra* (157 Ohio St. 297), the foregoing quoted portion of Section 4123.68(W) would prevent such compensation unless the decedent was continuously and totally disabled from January 16, 1951 (last exposure in 1943 plus 8 years), until his death.

In 1945, 1947 and 1950, the Industrial Commission disallowed decedent's claim for compensation on account of total disability from silicosis, and neither the Industrial Commission's file, nor the judgment entry or opinion of the Court of Appeals indicates that either the Industrial Commission or the Court of Appeals made any subsequent determination as to whether decedent was continuously and totally disabled from 1945, or even from 1951, until his death.

The Industrial Commission based its denial of the relator's death claim on a finding "that proof of record failed to establish that decedent's death * * * was due to or caused by the disease of silicosis." If it was not so caused, the death claim was properly denied. Whether it was so caused, was obviously a question of fact.

As the essential basis for its judgment, the Court of Appeals substituted its finding on that question of fact for the finding thereon by the Industrial Commission. In doing so it found that Sction 4123.68(W), Revised Code, "makes the autopsy findings the controlling evidence in regard to the disease of silicosis in a death claim" and disregarded, as does the dissenting opinion, a very substantial amount of evidence tending to indicate that any disability of the decedent prior to death and his death was not caused by silicosis.

The Court of Appeals apparently relied on that part of Section 4123.68(W) as in force on decedent's death, which read (this part is not now in the statute, having been eliminated by an amendment effective November 2, 1959 [128 Ohio Laws 743]):

"* * * The *commission* may *designate* a licensed physician, a pathologist, or such other specialists as are necessary to make an autopsy examination and tests to *determine* the *cause of death and certify written findings* to the silicosis referees." (Emphasis supplied.)

An autopsy was performed on April 9, 1958, the same day that decedent died.

The first notice of death and the preliminary application for death benefits were not filed with the Industrial Commission until early October 1958; and the record is clear that the autopsy was not made by anyone designated by the commission and that no written findings were certified to the silicosis referees. Also, the autopsy does not even purport "to determine the cause of death."

Hence, the foregoing statutory language will not support the conclusion of the Court of Appeals that, under Section 4123.68(W), Revised Code, those "autopsy findings are controlling evidence" in this death claim.

By the third paragraph of Section 4123.68(W), "compensation * * * on account of silicosis" is "payable only in the event of * * * death, in accordance with Sections * * * 4123.59."

Section 4123.59, Revised Code (as in effect on decedent's death, 126 Ohio Laws 1015, 1033), provides for death benefits "in case an injury * * * causes * * * death."

As pointed out in *McNees* v. *Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269, 275, 89 N. E. 2d 138:

"Although there is no statutory provision requiring a *proximate* causal relationship between a compensable injury and a death for which compensation is sought, this court has frequently held that it is necessary for a death claimant to establish that such an injury was the proximate cause of the death. *Aiken* v. *Industrial Commission,* 143 Ohio St. 113, 53 N. E. 2d 1018; *Gwaltney* v. *General Motors Corp.,* 137 Ohio St. 354, 30 N. E. 2d 342; *Weaver* v. *Industrial Commission,* 125 Ohio St. 465, 181 N. E. 894. * * *"

Since death benefits on account of an occupational disease are provided for by Section 4123.68(W), Revised Code, via Section 4123.59, Revised Code, which provides for death benefits only where "an injury * * * causes * * * death," death benefits on account of silicosis can be awarded only where the death was the proximate result of silicosis proximately caused by exposure to silica dust during employment.

The General Assembly has recognized that, whether disability or death is caused by silicosis, is not within the usual knowledge of lay witnesses or the Industrial Commission, because Section 4123.68(W), Revised Code, has specifically required medical testimony on that issue.

Thus, at the time of decedent's death, the sixth paragraph of Section 4123.68(W), provided in part:

"The commission shall appoint three referees to be known as 'silicosis referees' who shall be licensed physicians in good professional standing who have by special duty or experience acquired special knowledge of pulmonary diseases and at least one of said physicians shall be a roentgenologist. Before awarding compensation for

disability or death due to silicosis, the commission shall refer the claim to the silicosis referees for examination and recommendation with regard to the diagnosis, the extent of disability, and other medical questions connected with the claim.''

As amended, effective November 2, 1959, and now in effect without substantial change, that paragraph provides in part:

''Before awarding compensation for disability or death due to silicosis, the commission shall refer the claim to a qualified medical specialist for examination and recommendation with regard to the diagnosis, the extent of disability, the cause of death, and other medical questions connected with the claim.''

What was done and observed at the autopsy is described in the autopsy report largely in medical terms. The diagnosis in the autopsy also consists largely of medical terms.

The final diagnosis in the autopsy includes seven items. Only the second of the seven even indicates silicosis.

An understanding of these medical terms requires a special knowledge thereof that would ordinarily be far beyond the comprehension of laymen. For this reason, that autopsy report would be useful to the trier of the facts in the instant case (the Industrial Commission) only if interpreted by medical experts. In other words, the autopsy report, without such interpretation, can have little probative value on the question of whether there was a proximate causal connection between decedent's death and his exposure to silica dust during his employment over 15 years before. Cf. *Stacey* v. *Carnegie Illinois Steel Corp.* (1951), 156 Ohio St. 205, 101 N. E. 2d 897; *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569, 576, 577, 125 N. E. 2d 1; *Drakulich* v. *Indus. Comm.* (1940), 137 Ohio St. 82, 27 N. E. 2d 932.

There is such testimony in the file. That of Dr. Steiner, whose bill for services indicates that he had attended decedent from 1949 until prior to decedent's hospitalization two years before his death, would support a conclusion

that decedent's death was proximately caused by silicosis. So would the death certificate, which was prepared by this doctor.

However, while decedent was in the hospital where the autopsy was conducted his attending physician was Dr. Maurer. The hospital chart signed by him states his opinion as to the cause of death. Nowhere therein is there any reference to silicosis.

Also, the file contains a statement by Dr. Hudson, who was apparently asked to and did review the file, including (contrary to the statement in the dissenting opinion) the autopsy report, the death certificate and the testimony of Dr. Steiner. Thereafter, he gave to the Industrial Commission a written statement of his opinion. This statement reads:

"From a study of the claim, medical proof and reports on file, the deceased's death was due to hypertensive cardiovascular disease, myocarditis and mitro stenosis. Claimant had an unrelated emphysema and bronchitis that was not due to or aggravated by silicosis, and we do not concur in the cause of death 'silicosis' as reported on the death certificate.

"The claimant was not exposed to silica after he quit work and there would not be any increase in the silicosis or silicotic nodulation. The claimant's pulmonary condition was due to the emphysema and bronchitis and we do not concur in the opinion and conclusions of the attending physician.

"Medically disapproved."

The Industrial Commission file discloses further that decedent had been thoroughly examined by the silicosis referees and X-rays had been taken in 1943, 1945, 1947 and 1949. In each instance, the silicosis referees concluded that there was no disability of decedent due to silicosis.

On the record in the instant case, it is obvious that there is substantial evidence to support the conclusion of the Industrial Commission that decedent's death was not caused by silicosis, not merely what the dissenting opinion

refers to as "slight evidence." Thus, the Court of Appeals erred in substituting its contrary finding on that question of fact for the finding of the Industrial Commission.

As stated in the syllabus in *State, ex rel. Bevis,* v. *Coffinberry* (1949), 151 Ohio St. 293, 85 N. E. 2d 519:

"1. Before a writ of mandamus will be granted a clear legal right thereto must be shown, and the burden of establishing such right is upon the relator.

"* * *

"3. Whether disability suffered by a claimant is silicosis and whether the resulting disability is partial or total are questions of fact to be determined by the Industrial Commission, from which decision no appeal has been provided by law."

The following statement in the opinion by Matthias, J., at page 296, is particularly applicable to the instant case:

"The question presented to this court by the facts alleged in the petition involves the determination of a purely medical question of fact. The determination of such a question as the relator presents here, that is whether the complicating diseases of pulmonary emphysema and asthmatic bronchitis were caused by the silicosis condition, is so clearly a question of fact that the granting of a writ by this court would be in effect a requirement that the Industrial Commission determine a question of fact in the manner in which this court believes it should have been found and determined. It is clear that there was a positive difference of opinion between the medical authorities constituting the silicosis referees and the medical board of review of the Industrial Commission on the one hand, and the physicians who examined the relator on the other. In such a situation the relator obviously does not show a clear right to relief by way of mandamus and under the well established rule such a writ will not issue."

To the same effect, see *State, ex rel. Marshall,* v. *Keller, ante* 203.

Also, in the *per curiam* opinion of this court in *State, ex rel. Brewer,* v. *Indus. Comm.* (1950), 153 Ohio St. 471,

92 N. E. 2d 385, it is said, with reference to an attempt to get a court to substitute its judgment on a question of fact for that of the Industrial Commission:

"We do not pass upon the weight of evidence, being limited to ascertaining whether there was evidence pertaining to the point challenged."

For the foregoing reasons, the judgment of the Court of Appeals is reversed and final judgment is rendered for the Industrial Commission.

*Judgment reversed.*

ZIMMERMAN, MATTHIAS and O'NEILL, JJ., concur.

BROWN, J., concurs in paragraphs one, three and four of the syllabus and in the judgment.

HERBERT and SCHNEIDER, JJ., dissent.

HERBERT J., dissenting. I am unable to agree with my colleagues for the reason that I believe that their majority opinion restricts and limits the original jurisdiction conferred upon the Courts of Appeals by the Constitution of Ohio. Under such jurisdiction, the Court of Appeals is the trier of the facts as well as of the law. I do not believe that it is consistent with the Constitution for this court to hold that the decision of an administrative agency is final in the field of facts merely because there may be some slight evidence to support such decision. If the original jurisdiction of the Courts of Appeals in mandamus is to be so limited, considerable confusion may result when such limitation is recognized by the hundreds of agencies of government in Ohio, each with some decision-making power.

I believe that the Court of Appeals should make its own decisions upon the evidence presented to it in an original action in mandamus, and if supported by probative evidence the writ should issue.

In the case at bar, the parties stipulated that the file of the case before the Industrial Commission should be

considered by the Court of Appeals. This does not require the Court of Appeals to surrender its function as the trier of the facts, or to cripple the plenary jurisdiction conferred upon it by the Constitution.

After a thorough search of the record, I fail to find any substantial proof that silicosis and its associated lung diseases *were not* the cause of the death. On the other hand, a death certificate, an autopsy, direct testimony, as well as other evidence, definitely established a causal relationship between the occupational disease of silicosis and death of the decedent.

The decedent had worked for a period of approximately 28 years under exposure to silicosis. On October 19, 1943, the Industrial Commission "did find that claimant was permanently and totally disabled, due to silicosis and compensation was awarded * * * ." Thus, we have it in the record that 15 years before the death of Szekely he was found to be a permanently and totally disabled victim of silicosis and was awarded compensation. However, the Industrial Commission two years later decided that although Szekely did have silicosis, it was only "silicosis simple" and not sufficient to be disabling.

Section 4123.68(W) (now Section 4123.68[X]) of the Revised Code, read:

"Silicosis means a disease of the lungs, caused by breathing silica dust (silicon dioxide) *producing fibrous nodules* distributed through the lungs and demonstrated by X-ray examination, by biopsy *or* by autopsy." (Emphasis added.)

In view of the fact that the Industrial Commission finally refused to reconsider Szekely's contentions, there were no X-rays made after 1950. This is a death case. Szekely died on April 9, 1958. There was a long lapse of years during which no X-rays were taken. Consequently, expressions of opinions based upon old X-rays of conditions existing many years prior to his death would have little or no probative value to establish his condition on the day of his death, particularly since his lung condition grew progres-

sively worse. There was no biopsy taken. Consequently, the statute, Section 4123.68 of the Revised Code, leaves only the *autopsy* upon which any probative reliance can be placed to determine the cause of death. The autopsy presents to the naked eye, as well as through the microscope, the actual condition of the affected parts of the body of the deceased, and affords the production of proof by eye witnesses rather than by the opinion of an expert.

There is also the evidence furnished by the death certificate, and the Industrial Commission form entitled "PHYSICIAN'S CERTIFICATE IN PROOF OF DEATH," which was filled out by Dr. Steiner, the attending physician, and which discloses in its pertinent part:

"5(a) Diagnoses and descriptions of all injuries, diseases, and illnesses for which you have examined or treated the deceased and clinical findings: [Dr. Steiner's answer] 1. Bilateral pulmonary silicosis. 2. Bronchitis. 3 Emphysema. 4. Myocarditis, chr.

"* * *

"8. Principal causes of death. [Answer] Silicosis.

"9. Report history as obtained. [Answer] Worked many years in dust at Ohio Steel Foundry.

"* * *

"10. In your opinion, was there a causal relationship betwen decedent's death and the alleged injury or occupational disease? [Answer:] Yes."

The death certificate, taken from the records of the Ohio Department of Health, Division of Vital Statistics, gave as the cause of death:

"1. diffuse pulm. nodular silicosis.

"2. acute bronchitis.

"3. pulm. emphysema.

"4. chr. cholecystitis.

"5. nephritis and cystitis."

The autopsy was performed by F. W. Trapp, M. D., of the Department of Pathology of St. Rita's Hospital, Lima, Ohio.

The following findings were made:

" * * *

"LUNGS:

" * * * The external surfaces of the lungs are grayish black in color and they are coarsely *nodular* to palpation. Cut section through both lungs reveals a slate gray honeycombed cut surface that had many large areas of *nodular fibrosis.* * * *

"MICROSCOPIC EXAMINATION:

" * * *

"LUNGS:

"All sections of the lung show extensive areas of diffuse nodular hyalinized fibrosis intermixed with black pigment. * * *."

Seven items are listed as follows:

"1. Pulmonary emphysema, severe, bilateral.

"2. Diffuse pulmonary *nodular silicosis,* extensive, severe, bilateral. [The word nodular is found in the statute defining silicosis.]

"3. Acute bronchitis.

"4. Mitro stenosis, moderately severe.

"5. Cholecystitis and cholelithiasis.

"6. Benign nephrosclerosis, moderately severe.

"7. Chronic cystitis, moderately severe." (Emphasis added.)

David L. Steiner, M. D., is a graduate of the Medical School of the University of Cincinnati (1929), a member of the staff of both St. Rita's Hospital and Memorial Hospital at Lima, Ohio, and a member of numerous state and national medical bodies. He attended Szekely for about 12 years prior to his death. He was present at the autopsy. Dr. Steiner testified at the hearing before the Industrial Commission:

"* * * From the irritation of the dust in the lungs, it increases the emphysema. The severe and prolonged coughing seizures will contribute to the pulmonary emphysema and the blebs. And it was shown at autopsy some very large emphysema blebs."

At this stage he diagnosed Szekely's diseases as silico-

sis and pulmonary emphysema. Later corpulmonel was found.

His description of this disease follows:

"This condition of the heart develops due to obstruction of the blood as it is trying to be forced into the lung through the pulmonary vessels, and we have here the resistance producing—causing an inability of the lung to flow—the blood to flow as freely as it should. And due to the fibrosis and silicosis of the lung, consequently, the heart muscle has to work harder to push the blood into the lung, and so doing, causes muscle hypertrophy."

We now turn to Dr. Steiner's testimony concerning the autopsy.

"The autopsy was performed by the pathologist who, at that time was F. W. Trapp.

"Q. Dr. Blumstein is in charge of that department? A. Yes. And Dr. Blumstein, who is in charge of the department.

"Q. Doctor, did you attend the autopsy? A. Yes, I was interested after 12 years with this man, I was interested in seeing what was found at the autopsy.

"Q. Would you tell us what you saw and observed at the autopsy? A. At the autopsy we *saw the lungs*, which were grayish-black color, large blebs were seen at the apexes of the lung. But as one cut through the lung and held the surface up, it looked like a piece of coal. It was solid black. * * *

"Q. Were miscrosopic examinations taken? A. Microscopic examinations were taken, and they too confirmed the *heavy silicon deposits* in the lungs.

"Q. Now, Doctor, you have, of course, studied and read the autopsy report? A. Yes.

"Q. And that autopsy report correctly reflects the findings at autopsy; is that right? A. It did.

"Q. Doctor, was the heart examined at this autopsy? A. Yes; the heart was.

"Q. Would you tell us what the findings were with reference to the heart? A. The muscle—the musculature of

the heart showed enlargement, hypertrophy, and a finding consistent with corpulmonel.

"Q. How about the mitral valve? Was that Examined? A. The mitral value was examined.

"Q. What was—A. It showed some thickening and some fibrosis." (Emphasis added.)

Dr. Steiner continued:

"Q. What is an autopsy diagnosis? A. The autopsy diagnosis simply tells us what the organs look like at the time of his death. And in his case, as you compare the long history of these 12 years that I attended him, one can see why he couldn't breathe. One could see that he had no place to aerate his lungs. There was no place for oxygen exchange, because it was thickened, it was hard, *it was filled with silicon deposit*, and when you hold it up, and I wish we could have that piece of that lung here for the jury to see, the appearance of that, you don't have to be a doctor to tell it is black, and that was black.

" * * *

"Q. Doctor, in your opinion, was there a direct and causal relationship between the silicosis and the corpulmonel? A. There is a direct causal relationship between silicosis and corpulmonel.

"Q. In the case of Moses Szekely. A. In the case of Moses Szekely.

"Q. You signed the death certificate in this case, didn't you? A. Yes.

"Q. What did you give as the primary cause of death? A. The primary cause of death was silicosis with nodular formation. I think that is correct.

"Q. And did you not also give as a secondary and related cause, pulmonary emphysema? Doctor, would you tell the court whether there was any causal relationship in this case of Moses Szekely between the silicosis and the pulmonary emphysema? A. Well, I think the silicosis aggravated the emphysema. I think we possibly all have a small amount of emphysema, in our chest. But when we have silicosis, and the terrific and dreadful cough this man had, this emphysema would be increased and aggravated.

"Q. Do you consider the emphysema as a primary or

secondary cause of death? A. I would say it is secondary to the silicosis." (Emphasis added.)

Mr. Blair, counsel for the decedent's widow, then addressed the commission as follows:

"We would be very happy to have the commission or anybody representing the employer examine Dr. Steiner.

"Mr. Deshler: No questions."

It is rather disturbing that not a single witness among all of the paid staff of the Industrial Commission testified.

A Dr. Hudson, of the medical staff of the commission, was directed by the commission to give his opinion from an examination of the file. He looked over the old X-ray examinations and comments of various and sundry people, but did not refer to the autopsy, the death certificate, nor did he testify. I am frank to say that it is doubtful if much of the material submitted by the Industrial Commission in the massive file would pass the scrutiny of a trial court, over objection. This material pertained to decedent's condition years before his death. The instant inquiry is concerned with his condition *at death.* While the Industrial Commission presented opinions based upon X-rays taken many years before death, the widow presented unquestioned evidence which satisfied clearly every condition required by the statute to establish silicosis as the cause of death. She presented the testimony of Dr. Steiner and the autopsy report of Dr. Trapp, which was not disputed or contradicted. The evidence presented by the widow was in plain understandable language.

We call attention to the last paragraph of Section 4123.68 of the Revised Code, which read:

"All conditions, restrictions, limitations, and other provisions of this section, with reference to the payment of compensation or benefits on account of silicosis, shall be applicable to the payment of compensation or benefits on account of any other occupational disease of the respiratory tract resulting from injurious exposures to dust, except berylliosis."

Section 4123.85 of the Revised Code provides as follows:

"In all cases of occupational disease, or death, result-

ing from occupational disease, claims for compensation or benefits shall be forever barred *unless,* within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by licensed physician *or within two years after death occurs,* application is made to the Industrial Commission or to the employer in the event such employer has elected to pay compensation or benefits directly." (Emphasis added.) The application for death benefits was timely filed.

Section 4123.95 of the Revised Code reads:

"Sections 4123.01 to 4123.94, inclusive, of the Revised Code *shall be liberally construed in favor of employees and the dependents of deceased employees.*" (Emphasis added.)

The record in this cause establishes without any question of doubt whatsoever, that there was a clear duty specially enjoined by law upon the Industrial Commission to recognize the claim of this dead workman's widow and award her and her children compensation to which they were entitled. The refusal of the Industrial Commission to do so was a gross abuse of discretion.

For the foregoing reasons, the judgment of the Court of Appeals should be affirmed.