THE STATE, EX REL. M. T. D. PRODUCTS, INC., APPELLANT, *v.*
STEBBINS ET AL., APPELLEES.

(No. 74-1011—Decided July 9, 1975.)

*Mr. Frank E. Gafney,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Michael J. Hickey* and *Mr. Stanley R. Stein,* for appellee Industrial Commission.

*Messrs. Sindell, Sindell, Bourne, Stern & Guidubaldi* and *Mr. Dennis O. Norman,* for appellee Molly Reid.

*Per Curiam.* The question to be decided in this appeal is whether the Industrial Commission abused its discretion in finding that appellee Reid's injury resulted from the violation of the specific safety requirement of IC-13-04.-08.

The claimant was an inspector and relief machine operator for Industrial Plastics, Inc. At the time of the injury, she was operating a plastic injection molding machine. This machine was either an automatic or semi-automatic press, which on this day was set up to make plastic plugs for ironing cords. The machine was fed automatically from a bin of plastic granules located above the molds. This particular molding process required the operator to reach into the danger zone between the die and ram occasionally, to remove bits of plastic from the die and to wipe the die with a cloth.

Electrical power to the machinery that produced the horizontal motion of the ram towards the die was controlled by a gate guard located between the operator and the danger zone. With the gate closed, power was supplied so that the ram and die were able to come together, but the operator was physically unable to reach into the danger zone. With the gate open, the operator could reach into the danger zone, but the power of the ram was shut off.

However, on the day of the injury, the safety gate malfunctioned. While the safety gate was open and claimant's hand was in the danger zone, the machine cycled. The cause of this malfunction is not explained in the record.

The claimant had been operating the machine only a short time before the injury occurred. Just prior to the injury, the machine's plastic injection process malfunctioned, leaving plastic embedded in the die. She notified two of Industrial Plastic's managerial personnel that the injection process was malfunctioning. Before anyone checked the machine, the safety gate also malfunctioned, and claimant was injured when the ram closed on her hand while she was attempting to remove the plastic embedded in the die.

Bulletin IC-13 provides, in part:

"IC-13-01.01 Scope

"The purpose of this code is to provide *reasonable safety* for life, limb and health of employees. In cases of practical difficulty or unnecessary hardship, the Industrial Commission of Ohio may grant exceptions from the literal requirements of this code or permit the use of other devices or methods when, in the opinion of the Industrial Commission, equivalent protection is thereby secured. [Emphasis added.]

"The specific requirements of this code supplement those of IC-5, Specific Safety Requirements of The Industrial Commission of Ohio Relating to All Workshops and Factories and apply in addition to the requirements of IC-5.

" * * *

"IC-13-04.08 Injection Molding Machines

"(A) Guarding

"Danger zones on injection molding machines shall be guarded."

Bulletin IC-5, which IC-13 supplements, provides, in pertinent part:

"IC-5-08.02 Definitions

" * * *

"(D) Guards—Power press:

" * * *

"(3) Gate. A gate guard means a movable gate operated by the tripping device which interposes a barrier between the operator and the danger zone, and remains closed until the ram has completed the down stroke.

" * * *

"IC-5-09.03 Power presses

"(A) Guarding

"(1) Construction

"Every power press in use shall be constructed, or shall be guarded to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle.

" * * *

"(B) Acceptable methods of guarding

"(1) Manual feed presses, by:

"(a) Gate guard * * *

" * * *

"(j) Use of special tools * * *

"(2) Semi-automatic feed presses * * * by:

"(b) Gate guard, * * *

" * * *

"(3) Automatic feed presses * * * by:

" * * *

"(b) Gate guard * * *."

The August 1973 order of the Industrial Commission reads, in part:

"That the commission further finds that the claimant's injury was caused by the lack of an *effective* guard as required by Bulletin 13, Section 04.08 (as defined in IC-13-01.-01), the Code of Specific Safety Requirements Relating to Rubber and Plastic Industries, adopted by the Industrial Commission of Ohio. That as a result of the employer's violation of the above-mentioned section of the aforesaid code, the claimant was injured as in his application set forth." (Emphasis added.)

Other than the malfunction on February 7th, it is clear that the safety gate installed on this machine complied with the specific safety requirements promulgated by the commission. The finding of "the lack of an effective guard," and thereby a violation of the specific safety requirement, is based solely on the single malfunction of the safety gate on February 7th. The only evidence before the commission indicates that the safety gate had not malfunc-

tioned before the injury, and for at least nine months after the injury did not again malfunction. No evidence of the prior maintenance of the safety gate appears in the record. The commission's investigator, in his report, noted that the machine did have an automatic gate guard, and that he was unable to determine the cause of accident. The position of the commission is essentially that because the safety device failed, resulting in an injury, the safety device was not *effective*, and therefore violated the safety requirement.

The purpose of the safety regulation is to provide reasonable safety for employees. Regulation IC-13-01.01. The fact that a safety device that otherwise complies with the safety regulations failed on a single occasion is not alone sufficient to find that the safety regulation was violated. See *State, ex rel. Barrett*, v. *Indus. Comm.* (1963), 175 Ohio St. 255, 193 N. E. 2d 516. Regulation IC-13-04.08, as supplemented by IC-5, does not purport to impose absolute liability for an additional award whenever a safety device fails. The regulation does not forewarn the employer that, in addition to providing a safety device, the safety device must also be completely failsafe. *State, ex rel. Howard Engineering & Mfg. Co.*, v. *Indus. Comm.* (1947), 148 Ohio St. 165, 74 N. E. 201; *State, ex rel. Rae*, v. *Indus. Comm.* (1939), 136 Ohio St. 168, 24 N. E. 2d 594. In view of the evidence before the commission, that was the effect the commission sought to give the regulations in this case. The court finds that the allowance of the additional award in this case was an abuse of the commission's discretion.

Appellee Reid also urges, for the first time in this court, that the employer had notice that the machine was not operating properly. This issue was not raised in the Court of Appeals, and the Industrial Commission did not base its order upon any notice the employer may have had to that effect. As such, this issue can not be raised for the first time in this court. *State* v. *Bd. of Commrs.* (1974), 40 Ohio St. 2d 36, 318 N. E. 2d 852. The court notes, however, that the alleged notice given by appellee Reid to the em-

ployer related only to malfunction in the injection process, and had nothing to do with the operation of the safety gate.

Appellant, having sustained its burden of showing a clear legal right thereto, is entitled to the writ of mandamus. *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, 228 N. E. 2d 631; *State, ex rel. Szekely,* v. *Indus. Comm.* (1968), 15 Ohio St. 2d 237, 239 N. E. 2d 665; *State, ex rel. Rae,* v. *Indus. Comm., supra* (136 Ohio St. 168).

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the writ of mandamus is allowed.

*Judgment reversed and writ allowed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.