**The STATE, ex rel. LTV STEEL CORPORATION, f.k.a. Republic Steel Corporation, Appellant,**

**v.**

**INDUSTRIAL COMMISSION OF OHIO et al., Appellees.**

[Cite as *State, ex rel. LTV Steel Corp., v. Indus. Comm.* (1990), 69 Ohio App.3d 13.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–971.

Decided July 31, 1990.

14

*Baughman & Associates Co., L.P.A., R. Patrick Baughman* and *Lori A. Rowh,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Mark Mastrangelo,* for appellee Industrial Commission of Ohio.

*Ward, Kaps, Bainbridge, Maurer, Bloomfield & Melvin* and *Robert L. Bridges,* for appellee Dorothy M. High.

---

WHITESIDE, Judge.

Relator, LTV Steel Corporation, formerly Republic Steel Corporation, appeals from a decision of the Franklin County Common Pleas Court denying relator's petition for a writ of mandamus. Relator had requested that court to issue an order directing respondent Industrial Commission to vacate its order granting respondent Dorothy High ("claimant") an additional award based on a violation of a specific safety requirement. One assignment of error is raised, as follows:

"The common pleas court erred in finding no abuse of discretion and that some evidence appears in the file to support both the factual and interpretive conclusions of statutory definitions reached by the Industrial Commission."

Claimant was injured during the course of and arising out of her employment with relator while working as a hot bed person when she fell through an opening in the floor of the machine where she worked. Her claim for benefits was allowed by the respondent commission, and that claim is not at issue here. Claimant subsequently filed an application for an additional award based on relator's violation of a specific safety requirement. Following a hearing before a staff hearing officer, claimant was awarded an additional award of fifteen percent of the maximum weekly rate due to relator's violation of former Ohio Adm.Code 4121:1–5–02(C)(1)(a). Respondent Industrial Commission denied relator's motion for rehearing, prompting the filing of this action for a writ of mandamus in the court of common pleas, which was denied, and the instant appeal ensued.

The gravamen of relator's argument is that the trial court erred in affirming the finding of the respondent commission that relator violated a specific safety requirement when it failed to install a railing around or safety cover over the hole into which claimant fell. The Industrial Commission based its decision on former Ohio Adm.Code 4121:1–5–02(C)(1)(a), which provided:

"(C) Permanent openings—floor, wall and yard.

"(1) Floor openings.

"(a) Guarding.

"(i) Floor openings, not including hoistway openings, shall be guarded with standard railing or with fixed safety covers with flush hinges.

"(ii) When an overhead obstruction prevents the use of standard railing, the top of the railing shall be constructed not more than ten inches below the overhead obstruction.

"(iii) Removable or hinged railings or a substantial chain or wire rope section shall be installed when operations prevent installation of standard railing or fixed safety covers with flush hinges."

Relator argues that the opening into which claimant fell is not a "floor opening" within the contemplation of the regulation, which relator contends applies to permanent openings in established walking areas of the floor. It is relator's argument that the opening in question is part of the large machine in which the claimant works and which is usually completely covered by a run-out trough; that the structure of the machine makes any of the specific statutory guards unusable; and that the opening is actually in a platform rather than in the areas designated for employees to walk. Finally, relator argues that there is no evidence upon which the respondent commission could have based its construction of the applicable regulations.

The evidence before the respondent commission consisted primarily of the report of a commission special investigator. This report restated the affidavits of claimant, Timothy West, Ricky Bennett, and Kenneth Kushner, all of whom were employed by relator.[1] Claimant's affidavit basically states that, at the time of the accident, claimant was employed as a hot bed person, which required her to change the stops on troughs that hold cut steel stock. The common pleas court referee's report notes that, when the troughs are in a horizontal position, they completely occupy the floor openings. Claimant averred further in her affidavit that, while walking from the second trough to the fourth trough, she fell into the unguarded floor opening of the third trough. Apparently, the third trough had remained vertically suspended rather than being lowered to the horizontal position over the floor opening. Claimant averred further that visibility in the area of the incident was severely limited due to the amount of steam present. Finally, claimant stated that the area below the opening was filled with water to carry off the steel debris.

The affidavits of West and Bennett, neither of whom witnessed the accident, state the affiant's familiarity with the accident site and confirm claimant's statements as to the purpose of the water ditch below the floor opening and as to the excessive amount of steam in the area.

---

1. There is some indication that oral testimony may have also been given at the hearing held to determine whether a violation occurred. However, no transcript is included in the record, and we must thus conform our decision to the evidence actually presented before the court of common pleas.

Finally, the affidavit of Kushner indicates that he was employed as a safety engineer and conducted an investigation of the accident shortly after it occurred. Kushner described the steel-making process in which claimant was involved, as follows:

"Affiant further states that the investigation revealed that the product coming from the sixth floor to the hot bed had to be processed and received at the hot bed area. That the steel is received in a run-out trough which is in the vertical position when receiving the steel billet.

"That the billets are then cut to lengths from the continuous strand at the torch floor above the hot bed. That once the billets are cut to length the run-out troughs cantalever [*sic*] to the horizontal position to allow the steel billet to be rolled out on to the hot bed.

"Affiant further states that at the end of the cast, there is usually not enough steel remaining to fill the run-out trough when it is in the vertical position. That when this occurs, stop pins are placed in the trough when they are down in a horizontal position, that in order to take up any space left by a short billet.

"Affiant further states that when the run-out troughs are lowered to the horizontal position, there are two rolls on the concrete platform that fit up inside the trough in order to roll the steel out of the trough and out on to the hot bed.

"Affiant further states that during the investigation, he was informed that there was a breakout in number three strand during the cast and the trough remained in the up vertical position. That the injured apparently repositioned the stops in number two strand and proceeded to number four strand, and as she walked across the machine, she stepped into a roll pit at number three strand that was exposed due to the trough being in a vertical position.

"Affiant further states that the roll and roll pit are integrated parts for the said operation, and that the roll and roll pit was designed to accommodate the run-out trough while in the horizontal position. That it is necessary that the roll pit be open to allow scale debris to freely descend into the wash out system."

Based on the foregoing, the referee in the common pleas court recommended a determination that the evidence before the respondent Industrial Commission supported the commission's finding that the floor opening fell within the ambit of former Ohio Adm.Code 4121:1–5–02(B)(2) and that the Industrial Commission did not abuse its discretion in finding that relator had violated a specific safety requirement. The referee additionally stated that the malfunctioning of relator's equipment constituted no defense to the

finding that the violation had occurred because safety requirements are most essential at the time of equipment malfunction.

Initially, we note that the trial court's reference in the referee's report to the malfunctioning of the trough at the time of claimant's accident misconstrues the applicable standard. The referee apparently equated the trough with a safety device which, when in a horizontal position, covered the hole and thus protected nearby employees from falling into the hole. Even were we to agree that the trough performed some sort of safety function, it is well established that failure of a safety device on a single occasion is not sufficient, standing alone, to find that the safety regulation was violated. *State, ex rel. M.T.D. Products, v. Stebbens* (1975), 43 Ohio St.2d 114, 118, 72 O.O.2d 63, 66, 330 N.E.2d 904, 907.

Generally, the interpretation of a specific safety requirement is within the final jurisdiction of the Industrial Commission. *State, ex rel. Haines, v. Indus. Comm.* (1972), 29 Ohio St.2d 15, 58 O.O.2d 70, 278 N.E.2d 24. Where the commission's decision is supported by "some evidence," and is in accordance with law, the commission has not abused its discretion, and mandamus will not lie. *State, ex rel. Burley, v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936; *State, ex rel. Burton, v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 545 N.E.2d 1216. However, when the matter for review is whether to allow an additional award for violation of a specific safety requirement, which is in the nature of exacting a penalty from an employer, the rule of strict construction applies, and doubt as to whether a specific safety requirement applies must be resolved in favor of the employer. *State, ex rel. Watson, v. Indus. Comm.* (1986), 29 Ohio App.3d 354, 29 OBR 483, 505 N.E.2d 1015; *State, ex rel. Burton, supra; State, ex rel. Jones & Laughlin Steel, Inc., v. Indus. Comm.* (May 18, 1982), Franklin App. No. 81AP–919, unreported, 1982 WL 4178.

Considering the evidence most strongly in support of the commission's finding, we find no evidence supporting a finding that relator violated Ohio Adm.Code 4121:1–5–02(C)(1)(a), and thus no evidence of a violation of a specific safety requirement. The respondent commission found, as did the common pleas court, that the hole into which claimant fell constitutes a "floor opening" that should have been enclosed by a guardrail or otherwise guarded pursuant to the regulations in former Ohio Adm.Code 4121:1–5–02(C)(1)(a). "Floor opening" is defined in former Ohio Adm.Code 4121:1–5–02(B)(2) as "an opening measuring twelve inches or more in its least dimension, in any floor, platform, pavement, or yard, into which employees may step, such as a hatchway, stair or ladder opening, pit, or manhole." Strict construction of the safety requirements would seem to require, at a minimum, application of the

requirements only in areas reasonably foreseeable as being within the parameters of the definition. Here, there is no evidence which indicates that the hole was located in an area utilized as a walkway or as a usual route of movement for employees assigned to work in that area.

Moreover, it is undisputed that the opening is an integral part of the machinery in which claimant worked and that the very nature of the steel-cutting process involved required the hole to be uncovered at times and covered by the troughs the remainder of the time. Specifically, the affidavit of Kenneth Kushner states in part that " * * * the roll and roll pit are integrated parts for the * * * [described] operation, and that the roll and roll pit was designed to accommodate the run-out trough while in the horizontal position." Kushner's affidavit, in describing the process through which the steel flows before reaching the hot bed area, also explains that, when the troughs are in a vertical position to receive the steel billets, the "floor" openings are uncovered. Then, when the troughs are cantilevered to a horizontal position in order to evacuate the steel, the troughs completely cover the hole, and steel debris falls through the hole to be carried away by the water below.

The scope provision of former Ohio Adm.Code 4121:1–5–02(A) specifically provides that the regulations shall not apply in the following instances:

"This section * * * shall not apply to industrial grating holes nor to the working face of floor openings which are occupied by * * * conveyors, [or] machinery, * * * or platforms, scaffolds, pits, and trenches which are occupied for the purpose of providing access to a product, facility or process equipment while being worked upon."

Given the function of the trough in the process as described by Kushner, there is no evidence to support the finding of the commission that the trough is neither machinery nor a conveyor which occupies, at least sometimes, the working face of a floor opening, as contemplated by the statute. The trough operates to convey the steel billets from one location to another. This function is an integral step in the steel-forming process performed by the large machine in which claimant worked, and the trough is part of the machinery in this process. Strictly construing the regulations in favor of relator, there was no evidence before the commission to support its finding that the opening was one which needed to be guarded under Ohio Adm.Code 4121:1–5–02(C)(1)(a) or that relator violated a specific safety requirement. The common pleas court thus erred in affirming the order of the commission and denying the requested writ of mandamus.

Accordingly, relator's assignment of error is sustained, the judgment of the Franklin County Common Pleas Court is reversed, and this cause is remanded

**20**

to that court with instructions to grant a writ of mandamus, ordering the Industrial Commission to vacate its award for violation of a specific safety requirement.

*Judgment reversed*
*and cause remanded.*

McCORMAC and RADCLIFFE, JJ., concur.

GERALD E. RADCLIFFE, J., of the Ross County Court of Common Pleas, sitting by assignment.