[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 411.]

THE STATE EX REL. KENTON STRUCTURAL & ORNAMENTAL IRON WORKS, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Kenton Structural & Ornamental Iron Works, Inc. v. Indus. Comm.*, 2001-Ohio-90.]

*Workers' compensation—Alleged violation of specific safety requirement—Ohio Adm.Code 4121:1-5-15(A) and (C)—Overloading of chains used to move large tubing frames resulting in death of employee—Industrial Commission's determination that overloading was the proximate cause of the accident not an abuse of discretion, when—Amount of VSSR award granted by commission not an abuse of discretion, when.*

(No. 99-1504—Submitted February 27, 2001—Decided May 23, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-498.

————————————

*Per Curiam.*

{¶ 1} In 1995, David A. Hastings, David W. Winters, and Jerry R. Hart worked for appellant, Kenton Structural & Ornamental Iron Works, Inc. ("Kenton"). On March 20, the men were moving large tubing frames from one part of the plant to another, using an overhead crane. One of the frames was composed of six-inch-by-six-inch segments of one-quarter-inch metal tubing. While estimates vary, the frame was approximately ten feet by fifteen feet by thirteen feet. It weighed 9,384 pounds.

{¶ 2} Hart and Hastings selected two chains that had successfully moved similar loads just days earlier. The chains were three-eighths of an inch thick and six feet long. A four-inch-wide metal oval ring was attached to each end. The evidence is unclear as to exactly how the chains were rigged to the frame, although the parties appear to agree that they were in a double sling configuration. Thus, the

chains were not perpendicular to the load, but were hooked up at an angle. Co-worker Gregory L. Brown later indicated that this was normal procedure. The crane had lifted the frames slightly off the floor when one chain suddenly snapped. Instantly, the other chain snapped and the frame crashed to the ground, toppling onto Hastings. Hastings died at the scene.

{¶ 3} An inspection of the site shortly after the accident recovered two broken chain links. One was the same size as links of the chain in question. The other was not.

{¶ 4} After a workers' compensation claim was allowed, appellee Stacie R. Hastings, David's widow, applied for additional compensation, charging Kenton with several violations of specific safety requirements ("VSSR"). At a hearing before appellee Industrial Commission of Ohio, testimony focused on two topics: (1) the rated load capacity of the chains, and (2) a possible defect in one of the links. As to the former, steel industry consultant William W. Merrell testified that attached to one of the fatal chains was a manufacturer's tag listing the lifting capacity at six thousand six hundred pounds. The other chain was assumed to be the same. Evidence also demonstrated that rigging chains at an angle reduces the chain's lifting capacity. A chart entitled "Cam-Alloy Chain Sling Working Load Limits" revealed that chains used at a forty-five-degree angle could carry only seventy percent of the maximum working load limit. Merrell testified that this is a universal principle of physics that would apply regardless of the chain's manufacturer.

{¶ 5} Merrell also stated that one of the chains, upon testing, was discovered to have a defective master link. He added that this defect could not be detected by mere visual inspection.

{¶ 6} Among the findings made by the commission, two are relevant:

"2) 4121:1-5-15(C) requires all hoisting or haulage equipment [to] have a safety factor of no less than five. No violation of this section is found.

"Per the testimony of expert witness Mr. Merrell, chains used for hauling come from the manufacturer with a safety factor of five. Such a safety factor is required of this type of equipment[,] as it is subject to abuse due to the nature of the work involved. Mr. Merrell further indicated [that] there was no reason to assume the chains involved in this accident came with a safety factor of less than five. There has been no evidence presented to indicate [that] the chains in question did not come with a safety factor of five.

"Mr. Merrell testified that after the accident he was able to inspect the chains involved and found that one of the broken links had a defect and thus probably did not meet the safety factor of five at the time of the accident. However, he went on to state [that] there would have been no way to detect this defect, even with close inspection, before the accident. * * * Per *State ex rel. M.T.D. Products* [*Inc.*] *v. Stebbins* (1975), 43 [Ohio St.2d] 114 [72 O.O.2d 63, 330 N.E.2d 904], there is no violation for a one time malfunction of safety equipment when such is not foreseeable. Mr. Merrell clearly indicates that there is no way the employer could have become aware of the defect before the accident.

" * * *

"3) 4121:1-5-15(A) requires equipment such as * * * hoisting or haulage lines * * * chains * * * and attachments used to handle material or equipment shall be used in accordance with the manufacturer's recommendations. A violation of this section is found.

"Section (A) includes the use of chains as hoisting and haulage equipment. Both Winters and Hart state [that] chains were being used, and are what broke, at the time of the accident. * * * [T]he frame in question weighed 9,384 pounds. * * * Mr. Merrell testified [that] the manufacturer's tags, one of which was still attached to one of the chains, showed the manufacturer's ratings for the chains. He stated [that] both of the tags gave a rating of 6,600 pounds for each individual chain. * * * A rating of 6,600 pounds for each chain would amount to a total load

limit rating of 13,200 per the previously noted OSHA note taking sheet and the report of BWC Investigator Garver. * * * A sketch in [the] file from Mr. Winters * * * and the previously noted OSHA reports indicate the chains were running at a 45 degree angle. * * * The Cam-Alloy Chain Sling Working Load Limits chart on file indicates that chains used at a 45 degree angle can carry only 70 percent of their maximum manufacturer's recommended load capacity. * * * Mr. Merrell stated this part of the chart would be true of all manufacturers' chains because it is based on physics.

"Based on the facts and evidence stated above it is found [that the two chains involved in the accident were each] being used at a 45 degree angle which reduced [their] capacity by 30 percent. Therefore, 6,600 [minus] 30 percent [equals] 4620. 4620 time[s] 2 [equals] 9,240 total manufacturer's recommended load capacity for the chains as they were used at the time of the accident. Since the load that was being hoisted weighed 9,384 [pounds] it is found [that] the chains were not used in accordance with the manufacturer's recommendations as they were used to hoist a load that exceeded the manufacturer's rated load capacity. This violation was the direct cause of injury[,] as the breaking of the overloaded chains is what led to the hoisted load falling and ultimately hitting the decedent.

"Because of the extent and serious nature of the injuries involved in this case, the number of violations found by OSHA, and the fact [that] OSHA found a number of the violations to be serious, an additional award of compensation is granted to the widow claimant in the amount of 50 percent of the maximum weekly rate * * *."

{¶ 7} Reconsideration was denied.

{¶ 8} Kenton filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in assessing a VSSR. The court of appeals found the decision to be supported by "some evidence" and denied the writ.

4

**{¶ 9}** This cause is now before this court on an appeal as of right.

**{¶ 10}** Kenton makes four challenges to the VSSR award: (1) lack of "some evidence," (2) internal inconsistencies, (3) unilateral decedent negligence, and (4) the award's excessiveness. None of these challenges has merit.

### 1. "Some evidence"

**{¶ 11}** The commission concluded that the chains (1) had a vertical combined lifting capacity of thirteen thousand two hundred pounds and (2) were angled at forty-five degrees. Kenton claims that there is no evidentiary basis for either finding. We find this argument unpersuasive.

**{¶ 12}** Kenton's first assertion is simply wrong. Kenton ignores the Teledyne manufacturer's tag on one of the chains that specifically rated it at six thousand six hundred pounds. Kenton, moreover, does not dispute that the other unmarked chain was the same type. The tag is, therefore, "some evidence" that each chain was maximally rated at six thousand six hundred pounds when used vertically.

**{¶ 13}** The second issue—rigging angle—is important because of the numbers involved. At exactly forty-five degrees the chains' combined maximum load was reduced to 9,240 pounds. The frame weighed 9,384 pounds. With only a one-hundred-forty-four-pound difference, a variance of a few degrees, according to Kenton, could bring the chains into compliance.

**{¶ 14}** Kenton maintains that because the evidence relied on by the commission estimated the rigging angle at "approximately" forty-five degrees, it is insufficient to establish that the angle was exactly forty-five degrees. Given the strict construction directive in favor of an employer accused of a VSSR, Kenton argues that an abuse of discretion must be found. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 545 N.E.2d 1216. We disagree.

**{¶ 15}** The commission is the ultimate arbiter of evidentiary weight and credibility. *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d

481, 6 OBR 531, 453 N.E.2d 721. In that capacity, it chose not to attach undue weight to the qualifier "approximately." The angle of the chains could not be determined with utter precision after the accident and will never be known. Any assessment—even under the most rigorous scientific scrutiny—will always be an approximation or estimate.

{¶ 16} This is not a situation where the commission itself chose a number. OSHA arrived at the forty-five-degree figure. The commission merely decided that the term "approximately" did not undermine the credibility of that assessment. Therefore, we find there was no abuse of discretion.

2. Internal inconsistency

{¶ 17} Ohio Adm.Code 4121:1-5-15(A) and (C) address the use of hoisting equipment, including chains. Section (A) demands use according to the manufacturer's specifications, which would include maximum rated load capacity. Ohio Adm.Code 4121:1-5-15(C) requires the chain to have a minimum safety factor of five, meaning that the chain must withstand five times the maximum rated load.

{¶ 18} The commission found that the chain had been overloaded and that the excess weight caused it to snap. Hence, a violation of Ohio Adm.Code 4121:15-15(A) was found. The commission also found that the chain did not satisfy Section (C). It did not, however, find a violation of Section (C), because the noncompliance was due to an undetectable chain defect. This defect, the commission concluded, invoked *State ex rel. M.T.D. Products, Inc. v. Stebbins* (1975), 43 Ohio St.2d 114, 72 O.O.2d 63, 330 N.E.2d 904, which held that a single unforeseen failure of a safety device could not form the basis of a VSSR.

{¶ 19} Kenton criticizes the order as internally inconsistent as to the cause of the accident. It claims that the commission named overloading as the accident's cause for purposes of Section (A), but then claimed that the link defect caused the failure of the safety factor as to Section (C).

**{¶ 20}** Kenton's real objection addresses the conclusion that an overloaded chain caused the accident, under the theory that moderate overloading would not have mattered if the requisite safety factor existed. Consequently, since the chain's safety factor was reduced by an unforeseeable defect, Kenton would be protected from all VSSRs involving the chain—4121:1-5-15(A) *and* (C).

**{¶ 21}** However, the safety factor is really not an issue unless there is overloading. When the load is within the manufacturer's specifications, the safety factor is not relied on to keep the load suspended. Consequently, the determination that overloading was the proximate cause of an accident is not an abuse of discretion.

**{¶ 22}** Moreover, to reverse the relevant inquiry is to allow Ohio Adm.Code 4121:1-5-15(C) to subsume 4121:1-5-15(A), rendering the latter meaningless. Unless *grossly* overloaded, an overloaded chain that snaps necessarily lacks the requisite safety factor strength as well. If safety factor becomes the primary focus, the same argument will always be made: but for the diminished safety factor, overloading would have been irrelevant. This leaves little incentive for an employer to observe maximum-rated-load recommendations. We cannot endorse such a dangerous disregard for these specifications.

**{¶ 23}** We conclude, therefore, that the commission's analysis was not internally inconsistent. Again, unless severely overloaded, an overloaded chain may prompt two VSSR allegations—excess weight and insufficient safety factor. Here, the commission's review began where it must: with inquiry into the possibility of overloading. In this case, the commission found that the chains were overloaded and that the overloading was the proximate cause of the accident. It then proceeded to the next alleged VSSR—the chain safety factor. There, the commission indeed found failure. Analysis, however, was not complete until the commission determined whether there was any defense to this failure, and it

answered that question affirmatively. It concluded that failure was the result of an undetectable defect for which Kenton could not be held responsible.

**{¶ 24}** Thus, it was not inconsistent to find that overloading was the cause of the accident, while the defect was the cause of the safety factor deficiency.

### 3. Unilateral negligence of the decedent

**{¶ 25}** Kenton maintains that decedent was unilaterally negligent in rigging the chains at a forty-five-degree angle, foreclosing the VSSR award. We do not accept this argument.

**{¶ 26}** Employee negligence bars a VSSR award only where an employee deliberately removes a safety device or otherwise renders a compliant device noncompliant. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.* (1988), 37 Ohio St.3d 162, 524 N.E.2d 482. It does not apply where the employee simply makes a mistake that results in injury.

**{¶ 27}** In *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 544 N.E.2d 887, a plant supervisor selected the wrong chains for a job, and, as here, died when the chains failed. His employer argued that because the decedent picked the wrong chains when the right ones were available, no liability attached.

**{¶ 28}** We disagreed. We found that there was no evidence that "the decedent voluntarily chose the incorrect chain. In fact, the commission stated that his decision 'must be considered an aberration attributable to human error.' " *Id.* at 47-48, 544 N.E.2d at 892. Stressing that safety requirements were designed to protect employees from just such errors in judgment, *id.* at 47, 544 N.E.2d at 892, we found that the decedent's act did not bar an award.

**{¶ 29}** Our case is analogous. There is no evidence that decedent knowingly rigged the chains in a way to harm himself or others. To the contrary, co-worker Gregory Brown averred that claimant hooked up the chains in the customary manner. Brown stated that he did not know that angled rigging

decreases the load capacity of the chains, and there is no evidence that decedent knew either.  Accordingly, decedent's tragic mistake does not bar a VSSR.

### 4.  Award Amount

**{¶ 30}** The amount of a VSSR award can vary from fifteen to fifty percent, inclusive, of the maximum award established by law.  Section 35, Article II, Ohio Constitution.  The commission levied the maximum penalty "because of the extent and serious nature of the injuries involved in the case, the number of violations found by OSHA, and the fact OSHA found a number of the violations to be serious."  Kenton alleges that the commission abused its discretion in relying in part on OSHA violations.  We reject this contention.

**{¶ 31}** *State ex rel. St. Marys Foundry Co. v. Indus. Comm.* (1997), 78 Ohio St.3d 521, 678 N.E.2d 1390, recognized the commission's considerable discretion in setting the amount of a VSSR.  We wrote:

"[T]he commission's discretion in assessing VSSR amounts is limited only by this constitutional [percentage] standard and * * * the commission commits an abuse of discretion, correctable in mandamus, *only* by assessing an award outside this range."  (Emphasis added.)  *Id*. at 524, 678 N.E.2d at 1392.

**{¶ 32}** The violation in this case resulted in death, and the award fell within the constitutional parameters.  The commission did not abuse its discretion.  The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment.

————————

*Kegler, Brown, Hill & Ritter, Timothy T. Tullis* and *David M. McCarty*, for appellant.

*W. Michael Shay*, for appellee Stacie R. Hastings.

*Betty D. Montgomery*, Attorney General, and *Jon D. Grandon*, Assistant Attorney General, for appellee Industrial Commission.

_____