THE STATE, EX REL. CARLTON, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. Carlton, *v.* Indus. Comm. (1983), 6 Ohio St. 3d 433.]

(No. 82-1775—Decided August 31, 1983.)

Mr. James E. Buchan, Jr., for appellant.

Mr. Anthony J. Celebrezze, Jr., attorney general, and Mr. Robert J. Kent, for appellee Industrial Commission.

Messrs. Baker & Hostetler and Mr. Steven J. Habash, for appellee Aspro, Inc.

*Per Curiam.* Pursuant to the Ohio Constitution, the commission has adopted specific rules for the purpose of affording employees reasonable protection in their places of employment. IC-5-08.03, Power Presses, states in Subsection (A)(1) that "[e]very power press in use shall be constructed, or shall be guarded to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle." IC-5-08.03 (B)(1)(c) designates sweep guards as an approved method for complying with Subsection (A)(1). Appellant contends that her employer violated IC-5-08.03, inasmuch as the sweep guards with which press No. 113 was admittedly equipped did not effectively sweep her hands from the danger zone and that the press was not properly guarded. We agree.

This court stated in *State, ex rel. M.T.D. Products,* v. *Stebbins* (1975), 43 Ohio St. 2d 114, 118 [72 O.O.2d 63], that "[t]he fact that a safety device * * * failed *on a single occasion* is not alone sufficient to find that the safety regula-

tion was violated." (Emphasis added.) The controlling fact becomes whether Aspro had notice of any of the sweep guard's previous failures.

Aspro's notice was evidenced by the affidavit of Ed Thompson. As noted in the statement of the facts, that affidavit stated that on January 12, 1977, the ram on press No. 113, without being activated, descended suddenly, and that the sweep guards responded so slowly that he almost caught his hands in the danger zone. It further stated that these events were communicated to his foreman together with his request for permission to be moved to another press, which request was granted. Appellant's accident occurred on the same press approximately one hour later.

There is no evidence in the record affirmatively rebutting this affidavit. The commission's special investigator reopened the case but relied on affidavits executed before Thompson's allegations surfaced.

Appellees argue that Thompson's affidavit was taken long after the events which it described took place and that the commission could reasonably have disregarded it. It was intimated that Thompson, having been laid off, had a retaliatory motive in executing the affidavit. Such speculation, however, goes to the credibility of the evidence. It is not evidence in itself. There was no evidence in the record before the commission affirmatively rebutting the evidence of the ultimate controlling fact: that Aspro had notice of the safety device's previous failures.

Appellees contend that there was evidence in the record that the safety devices had not failed. They point to evidence illustrating a number of instances during which the sweep guards on press No. 113 worked properly. Such evidence, however, is irrelevant to the existence or non-existence of the ultimate controlling fact. No amount of evidence tending to prove how well the sweep guards on press No. 113 *generally* worked will rebut evidence tending to prove that they failed on certain specific occasions.

In cases such as this "[w]here the uncontested evidence shows a violation of a specific safety requirement the Industrial Commission has abused its discretion and mandamus will be granted." (Citation omitted.) *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77, 79 [14 O.O.3d 275]. There was evidence in the record to show that Aspro had notice that press No. 113 was not guarded to prevent the hands of the operator from entering the danger zone during the operating cycle. It was not rebutted. When Aspro assigned appellant to press No. 113, it violated IC-5-08.03. The commission abused its discretion in failing to make the appropriate additional award. The judgment of the court of appeals is accordingly reversed and the writ is allowed.

*Judgment reversed
and writ allowed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ. concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. Thompson's affidavit, if believed, establishes a situation which could give rise to a finding of violation of the safety standard pertaining to guarding. However, there was other evidence before the Industrial Commission that refuted Thompson's affidavit. Scott, the foreman, stated that the power press was equipped with a double sweep guard which was in proper working order and that, after the accident, the press was checked and no defects could be found. Scott further stated that he does not know what could have happened to cause the accident. The maintenance foreman of Aspro investigated the accident and found no evidence of malfunction which could have caused the accident and found that the sweep guards were operating properly. Scott also told the Industrial Commission investigator that, if there had been a failure of the sweep guards, it could not have been a "one time thing" as they would remain defective until mechanically fixed.

It was a factual determination within the purview of the Industrial Commission's discretion as to whether Aspro was on notice of defects in the operation of the power press prior to assigning Carlton to work on the press. It was also a factual question as to whether the sweep guards or the press malfunctioned any time other than the one time when Carlton was injured. In this regard, the commission did not abuse its discretion.

Accordingly, I would affirm the judgment of the court of appeals.