THE STATE, EX REL. ASPINWALL, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as State, ex rel. Aspinwall, *v.* Indus. Comm. (1988), 40 Ohio St. 3d 55.]

(No. 87-1519—Submitted September 20, 1988—Decided December 14, 1988.)

*Deegan & McGarry* and *James J. McGarry,* for appellee.

Anthony J. Celebrezze, Jr., attorney general, Helen M. Ninos and Dennis L. Hufstader, for appellant Industrial Commission.

Vorys, Sater, Seymour & Pease, Bruce L. Ingram and Linda A. Blair, for appellant Eaton Corporation.

Per Curiam. The determination of disputed factual situations is within the final jurisdiction of the commission, subject to correction in mandamus only upon a showing of an abuse of discretion. State, ex rel. Allied Wheel Products, Inc., v. Indus. Comm. (1956), 166 Ohio St. 47, 1 O.O. 2d 190, 139 N.E. 2d 41. Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus will not lie. State, ex rel. Burley, v. Coil Packing, Inc. (1987), 31 Ohio St. 3d 18, 31 OBR 70, 508 N.E. 2d 936. In making a VSSR award, the commission must determine that a claimant's injury resulted from the employer's failure to comply with a specific safety requirement. Section 35, Article II, Ohio Constitution; State, ex rel. Haines, v. Indus. Comm. (1972), 29 Ohio St. 2d 15, 58 O.O. 2d 70, 278 N.E. 2d 24. At issue presently is whether there is "some evidence" to support the commission's determination that appellee's injury was not caused by the appellant-employer's failure to comply with a specific safety requirement. We find that there is some evidence.

The machine in question, described as a hydraulic press, was installed in 1947. The appellate court found appellant-employer to be in violation of Ohio Adm. Code 4121:1-5-11(E). This provision and its predecessors all require that power or hydraulic presses "be constructed, or shall be guarded, to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle." The provision additionally lists a two-handed tripping device or control as an acceptable method of compliance.

The commission found that appellee's injury did not occur during the operating cycle. This term is not defined in the cited provisions. Appellants contend that "operating cycle" must be defined within the context of the machine, i.e., the physical cycling of the machine, completed when the ram ascends to its resting position. Appellee's definition, on the other hand, encompasses the entire part production process — insertion of the piece through its final removal. Appellants' contention is more persuasive.

We addressed this concept in State, ex rel. King, v. Indus. Comm. (1988), 35 Ohio St. 3d 185, 519 N.E. 2d 652. King worked on a trim press, removing the flash from aluminum castings. In operating this machine, he would manually insert a gate with its attached castings into a die set mounted inside the press. He would then activate the press with a two-handed tripping device, removing the part once the upper platen had ascended. On the date of injury, the platen unexpectedly descended onto his hands as he reached in to remove the gate.

King alleged a violation of Ohio Adm. Code 4121:1-5-11(E), contending that the employer failed to provide a guard so as to prevent his hands from entering the danger zone during the operating cycle. In affirming the commission's denial, we determined that the claimant was not injured during the "operating cycle," reasoning:

"When describing his conduct just prior to his injury, appellant stated:

" 'That he then removed his hands and actuated the press. That the upper

*platen then ascended,* and the affiant reached into the press with both hands and took hold of the scrap gate.'

"This averment indicates that the upper platen of the press had ascended and completed a cycle before appellant placed his hands in the danger zone. This depiction would satisfy the requirement of Ohio Adm. Code 4121: 1-5-11(E) that the guard prevent the employee's hands from entering the danger zone 'during the operating cycle' of the press." (Emphasis *sic*.) *Id.* at 187, 519 N.E. 2d at 654.

See, also, *State, ex rel. Grimes,* v. *Indus. Comm.* (Aug. 14, 1986), Franklin App. No. 85AP-902, unreported.

"Operating cycle" was viewed more broadly in *State, ex rel. Geauga Industries Co.,* v. *Indus. Comm.* (1979), 60 Ohio St. 2d 109, 14 O.O. 3d 341, 397 N.E. 2d 1202. In that case, the claimant worked at a molding machine operated by a two-handed tripping device. She placed parts into the die area and activated the machine. After cycling, the machine opened, claimant reached in, air-hosed each part, and then removed them. Immediately preceding the injury, the middle mold stuck to the top one. While she was reaching in to remove the parts, the middle mold suddenly fell, crushing claimant's hand.

Citing the same safety requirements as those currently at issue, the employer also referred to the "operating cycle" and argued that since an acceptable guarding device (two-handed tripping device) was used, there was no violation of a specific safety requirement. The commission disagreed, finding that there "were not sufficient guards for the machine during the *entire* operating cycle of the machine as required by IC-5-08.03(A). There was a guard for the first phase of the process, but there was no guard

during the second phase. It was during the second phase of the operating cycle that the claimant was injured." (Emphasis *sic*.) *Id.* at 111, 14 O.O. 3d at 342, 397 N.E. 2d at 1203.

This court, in affirming the commission's decision, found that "it was not unreasonable for the commission to require guards for the entire operating cycle of the machine." *Id.* The decision thus seems to contemplate "operating cycle" as encompassing more than merely the physical movement of the ram. It suggests that any required insertion of the hands into the danger zone falls within the "operating cycle."

We find this interpretation to be too broad. If part removal is included in the "operating cycle," it would follow that placement and midphase adjustment are included as well. As such, an employer would essentially be required to prevent hands from *ever* entering the danger zone. Such a result appears inconsistent with legislative intent. If the General Assembly intended the danger zone to be guarded at all times, there would have been no need for the limiting language "during the operating cycle." Moreover, a two-handed tripping device is specifically enumerated as an acceptable method of "operating cycle" protection. That device, however, only provides protection during actual physical cycling of the ram. It would not have prevented the present accident.

In *State, ex rel. Gentzler Tool & Die Corp.,* v. *Indus. Comm.* (1985), 18 Ohio St. 3d 103, 105, 18 OBR 137, 139, 480 N.E. 2d 397, 399, we dealt with the same safety provision as that presently before us, noting that the provision did "not require that a power press operator's hands be guarded from ever entering the danger zone. Rather, it is only required that an operator's hands be guarded from entering the danger

zone 'during the [machine's] operating cycle.' "

The commission's interpretation also suggests that "operating cycle" is confined to operator-intended press activation. *Gentzler Tool* also supports this conclusion. In that case, the claimant was injured when a co-worker manually activated the press, bypassing the pull-back safety guard and causing the ram to descend on the claimant's hand. We found no VSSR since there was no evidence indicating that the guards had been ineffective during the operating cycle of the power press. We reasoned that because the guards had never failed when activated by the operator, this kind of activation must be that contemplated by the definition of "operating cycle."

Appellee's reliance on *State, ex rel. Carlton,* v. *Indus. Comm.* (1983), 6 Ohio St. 3d 433, 6 OBR 477, 453 N.E. 2d 607, is misplaced. Unlike the present case, *Carlton* involved the question of VSSR liability where the employer knew of previous safety guard malfunctions. Here, appellee has provided no support for his allegation that the press previously malfunctioned with appellant's knowledge and inaction.

Interpretation of a specific safety requirement is within the commission's sound discretion. *Allied Wheel, supra.* Moreover, "all reasonable doubts concerning the interpretation of the safety standard [are] to be construed against the applicability of the standard to [the] employer." *State, ex rel. New Departure Hyatt Bearings,* v. *Indus. Comm.* (Mar. 3, 1983), Franklin App. No. 82AP-842, unreported, at 3. A synthesis of the cases cited above supports the commission's interpretation of "operating cycle" as operator-intended ram movement. The parties uniformly agree that ram descent in the case at bar was neither operator-intended nor operator-activated. There was thus "some evidence" to support the commission's decision.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and WRIGHT, JJ., concur.

DOUGLAS, J., concurs in judgment only.

H. BROWN, J., not participating.