[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 462.]

THE STATE EX REL. SCOTT FETZER COMPANY, HALEX DIVISION, APPELLANT,

*v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Scott Fetzer Co., Halex Div. v. Indus. Comm.*,

**1998-Ohio-457.]**

*Workers' compensation—Industrial Commission does not abuse its discretion in*
*assessing a violation of a specific safety requirement when there is "some*
*evidence" in support of its order.*

(No. 95-1545—Submitted March 25, 1998—Decided April 22, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD04-513.

———————————

{¶ 1} On June 16, 1983, appellant, Scott Fetzer Company, Halex Division, assigned its employee, claimant Kazimierz Chodubski, to its number 38 die cast machine. The machine was, at one time, completely manually operated. Sometime prior to June 16, 1983, however, the machine was extensively modified to accommodate a robotic device that retrieved newly formed parts after the die faces separated. Among those modifications was the removal of the machine's interlocking safety guards. This removal also effectively deactivated an additional safety feature — a ratchet bar that was designed to prevent the dies from unintentionally closing.

{¶ 2} The employee assigned to that machine had several responsibilities. The employee initially activated the machine from a control panel. The employee checked the die for flash or dirt and cleaned the die if needed.

{¶ 3} The employee's attention then turned to the linkage mechanism that ran the die. Die heights were adjusted and the die was oiled. An inspection run followed that consisted of ten "shots." If the run went smoothly, then the machine

was placed on "auto." The employee then started the robot, which, in turn, activated the castings.

{¶ 4} Once the robotic device was activated, the employee—in addition to other duties—was required to monitor the machine for malfunction or misformed parts. If defective parts were made, the employee stopped the machine, cleaned the die, and restarted the machine. If a part was lodged in the die, the employee used a hammer and chisel to remove it.

{¶ 5} On the date in question, the die was making both good and bad parts, with the latter often sticking. Claimant reported this to his foreman, who instructed claimant to keep running the machine until the maintenance department could look at it. At some point, claimant shut the machine down in order to remove a part that had gotten stuck. While claimant was leaning in to remove the part, the dies unexpectedly closed, severely injuring the claimant.

{¶ 6} Appellee, Industrial Commission of Ohio, allowed claimant's workers' compensation claim for "fractured rib, crush trauma to upper body with posterior rib fracture 4-8 on right and 6 on left, bilateral lung contusion, friction burns of upper arm and abrasion right shoulder and upper arm, closed head injury with broken upper denture plate and loose teeth, bilateral pneumothorax and left hemothorax; post traumatic stress reaction." On May 2, 1989, claimant applied for additional compensation, alleging that Fetzer had violated numerous specific safety requirements ("VSSR"). One of the violations alleged was of Ohio Adm. Code 4121:1-5-11(D)(6), which reads:

"Forging machines, other power machines and machine tools, hydraulic and pneumatic presses, and power press brakes.

"* * *

"(D) Other power machines and machine tools.

"* * *

"(6) Die casting machines.

"Danger zones on die casting machines shall be guarded."

{¶ 7} Among the evidence submitted to the commission was the deposition of safety consultant Gerald C. Rennell. Rennell inspected the number 38 die cast machine after claimant's injury. When questioned about the modifications made to the machine, he stated:

"Q [Counsel]. All right. What about those modifications making the machine, in your opinion, unreasonably dangerous?

"A[Rennell]. There was no safeguarding system at all. There was no safeguarding system at all now for the point of operation."

{¶ 8} When questioned as to the purpose of an operator on a robot-equipped machine, Rennell answered:

"[O]ne might say if you have a robot in there the operator will never be in there, and, therefore, he will never be injured. Number one, that is not true with molten metal spit, obviously that is going to come out whether the operator is in there or not; and, number two, I have never seen an automatic operation in my life that always run[s] automatically. In other words typically what happens with an automatic operation, and this is not only on die cast machines, but virtually on any automatic machine, they run until something goes wrong and then that's why you have an operator, then the operator goes in and rectifies or repairs that problem. If you don't protect the operator against injury going in to make this[,] then you are certain to have injury."

{¶ 9} Claimant's application was heard by a staff hearing officer on November 2, 1992. The staff hearing officer found a violation of Ohio Adm. Code 4121:1-5-11(D)(6), writing:

"It is undisputed the machine which injured claimant was a die casting machine, and that the site of his injury was the 'danger zone' as that term is defined at OAC 4121:1-5-01(B)(7) [now (B)(34)]. 'Guarded' is defined at OAC 4121:1-5-01(B)(17) [now (B)(70)] as 'the object is covered, fenced, railed, enclosed, or

otherwise shielded from accidental contact.' It is undisputed the danger zone had no physical enclosure to physically exclude a body part. Employer contends the use of a robot to remove normal parts satisfies this requirement. Employer's contention is rejected for two reasons. First, employer had an employee (claimant) whose principal assigned duty was to reach into the danger zone on a frequent basis, so it cannot be contended [that] exposure to the danger zone was so rare an event as to render use of the robot arm of equivalent protection to a physical enclosure. In this regard it is noted this requirement is not limited to the 'operating cycle.' Second, while it is true that projection of claimant's body into the danger zone was purposeful rather than accidental, there nevertheless was no guarding of the danger zone. To conclude [that] an employer's unequivocal violation of this requirement invokes a penalty and additional award only where the entry of the body part into the danger zone is by stumbling, backing into or being thrown into the danger zone is to render the requirement nearly a nullity in that there would be no requirement [for an] employer [to] do anything to protect an employee assigned to reach into a danger zone, and to neglect the methods of guarding which disengage the machine from its power supply when displaced or safely expel a body part whenever the machine is placed in motion."

{¶ 10} Fetzer's motion for rehearing was denied. That order read:

"The employer has not submitted any new and relevant evidence nor has the employer shown that the order of November 2, 1992 was based on an obvious mistake of fact.

"It is hereby ruled that three of the employer's arguments regarding their disagreements with the Hearing Officer's rulings, namely that one, the finding that the claimant was the operator of the die casting machine, two, that the danger zone of the machine was not guarded, and three, that the interpretation of the term operating cycle as found by the Hearing Officer are all legal, not factual conclusions. Consequently, because rule 4121-3-20(G)(1) allows a rehearing only

if a factual error is committed, and the three errors outlined above are all allegedly legal errors, there would be no basis to grant a rehearing based on those possibly mistaken rulings.

"Lastly, the Hearing Officer's determination that the claimant's job duty required him to reach into the danger zone on a frequent basis is a factual findings [*sic*]; however, it is concluded that this finding was not in error.

"This conclusion is based on the fact that as a machine operator, claimant's job required him to reach into the danger zone with a hammer and a chisel and remove bad parts stuck in the die of the machine. On the day of the injury, the claimant specifically stated that the machine was making good and bad parts. While the claimant did not specify how many bad parts were being produced that day, implicit in his statement is the fact that at least some of the parts being made were defective and would have to be removed by him throughout the day. Therefore, it was not unreasonable for the Hearing Officer to have concluded that claimant would frequently have to reach into the danger zone to remove bad parts in the course of his work."

{¶ 11} Fetzer filed an action in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in assessing a VSSR. The court of appeals denied the writ, after finding "some evidence" in support of the commission's order.

{¶ 12} This cause is now before this court upon an appeal as of right.

_____

*Rademaker, Matty, McClelland & Greve, Robert C. McClelland* and *Kirk R. Henrikson*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Sandra L. Nimrick*, Assistant Attorney General, for appellee.

_____

***Per Curiam.***

**{¶ 13}** Ohio Adm.Code 4121:1-5-11(D)(6) demands that danger zones on die cast machines be guarded. Former Ohio Adm.Code 4121:1-5-01(B)(17) defines "guarded" as "covered, fenced, railed, enclosed, or otherwise shielded from accidental contact." Fetzer presents three arguments that alternately assert compliance and inapplicability. Upon review, we find none of them persuasive and affirm the judgment of the court of appeals.

**{¶ 14}** Fetzer cites the language "otherwise shielded from accidental contact" and claims that the robotic equipment performed that function by eliminating the need for claimant to be in the danger zone during the operating cycle. This argument fails for two reasons.

**{¶ 15}** First, the protection that Ohio Adm.Code 4121:1-5-11(D)(6) requires is not confined to the machine's "operating cycle." This distinguishes this case from *State ex rel. Aspinwall v. Indus. Comm.* (1988), 40 Ohio St.3d 55, 531 N.E.2d 681, on which Fetzer heavily relies. There, the relevant part of the safety requirement expressly limited protection to the machine's "operating cycle." The provision before us contains no such restriction.

**{¶ 16}** Second, the robotic device prevented accidental contact only while parts were actually being cast. It provided no protection when claimant—as he was often required—entered the danger zone to dislodge a part.

**{¶ 17}** Fetzer also argues that claimant was not entitled to the protection of Ohio Adm.Code 4121:1-5-11(D)(6) because he was the "tender," not the "operator" of the machine. This contention fails as well. Regardless of what Fetzer chose to call claimant, he was actively involved in the machine's operation. Claimant started, inspected, and cleaned the die. He operated the linkage mechanism and set die heights. He oiled the die and checked for defective parts. He was responsible for lodged parts and correcting malfunctions. He was not, therefore, a casual observer with no responsibility for or participation in the machine's function.

**{¶ 18}** Fetzer lastly alleges that claimant has not established the requisite causal relationship because he has not established why the die closed. Fetzer misconstrues the nature of the relevant causal relationship. Claimant was not required to explain precisely how the accident happened. He was required to show only that the machine was not guarded and that the absence of this protection proximately caused his injuries. Claimant has satisfied this burden.

**{¶ 19}** Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————