DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Advanced Metal Precision Products, filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission") to vacate its order granting the application of respondent, Gloria J. Knowles ("Knowles") for an additional award for a violation of a specific safety requirement ("VSSR") and to enter a new order denying the application.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On October 21, 2004, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court grant the requested writ. (Attached as Appendix A.) Respondents timely filed objections to the magistrate's decision, which are now before the court.
 {¶ 3} Knowles objects to the magistrate's conclusion that, notwithstanding the fact that the Haeger Press does not prevent the operator's hands from entering the danger zone during the operating cycle of the machine, which violates Ohio Adm. Code 4121:1-5-11(E), VSSR liability should nonetheless not be imposed because Knowles' injury did not occur during the operating cycle of the press. She argues that the requested writ should be denied because there is some evidence in the record to support the commission's conclusion that her injury did occur during the machine's operating cycle.
 {¶ 4} The magistrate relied upon the definition of "operating cycle" set forth by the Supreme Court of Ohio in State ex rel. Aspinwall v.Indus. Comm. (1988), 40 Ohio St.3d 55, 531 N.E.2d 681. Therein, the court defined "operating cycle" as "operator intended ram movement." In this case, the magistrate concluded that Knowles' injury did not occur during operator intended ram movement, and based this conclusion on the commission's finding that Knowles had inadvertently depressed the foot pedal. The magistrate concluded that inadvertence cannot be equated with the type of intentional conduct contemplated in Aspinwall, and on that basis found that Knowles' injury did not occur during the operating cycle.
 {¶ 5} Knowles argues that although the commission found she inadvertently depressed the foot pedal, it still must be presumed that she intended to depress the foot pedal. For support of this proposition, she relies on the fact that she actually stepped on the foot pedal, and on the fact that she was attempting to insert a pem at the time she stepped on the foot pedal. Both of these facts according to Knowles, provide circumstantial evidence that she intended to depress the foot pedal. If she intended to depress the foot pedal knowing that such an action would result in ram movement (even if this action was inadvertent), then it was not an abuse of the commission's discretion to find that Knowles' injury occurred during the operating cycle of the machine.
 {¶ 6} Knowles points out that she was operating the machine in the way the manufacturer intended workers to operate it while performing the designated work function, and that the Supreme Court of Ohio has previously held that the purpose of the specific safety requirements in the Ohio Administrative Code is to protect workers from their own negligence. See State ex rel. Cotterman v. St. Mary's Foundry (1989),46 Ohio St.3d 42, 47, 544 N.E.2d 887. She argues that, under the magistrate's interpretation, a violation could never be found because no press operator would ever intend to cycle the machine before removing her hands. For this reason, she argues, logic should prevail over the illogical result that flows from the magistrate's strict application of the definition of "operating cycle" set forth in the Aspinwall case.
 {¶ 7} Similarly, the commission argues in its objection that, underAspinwall, so long as the ram movement was operator activated this is sufficient to constitute "operator intended" ram movement. It also argues that the magistrate's application of Aspinwall in this case deprives injured workers of the protection from their own mistakes, which, the commission argues, is the purpose of the specific safety requirements.
 {¶ 8} In opposition, relator argues that the commission's and Knowles' interpretation of "operating cycle" would result in the imposition of strict liability because, thereunder, a violation will always be found in any case in which a worker is injured during ram movement of a hydraulic or pneumatic press. Distilled to its basic premise, relator's argument consists in the notion that an action cannot be both inadvertent and intended. Relator argues that because the commission found, as a factual matter, that Knowles unknowingly and inadvertently depressed the foot pedal, the evidence supports only the conclusion that she did not intend to precipitate ram movement.
 {¶ 9} Relator also quarrels with the commission's argument that, underAspinwall, all that is required for an injury to have occurred during the operating cycle is for the movement to have been "operator activated." Relator directs our attention to the case of State ex rel. Garza v.Indus. Comm. (2002), 94 Ohio St.3d 397, 763 N.E.2d 174, which is one of the cases upon which the magistrate principally relied. Relator argues that the facts of Garza are indistinguishable from the present case in that, in both cases, the injured worker unknowingly activated the press while a part of the worker's body was within the machine's point of operation. In Garza, the Supreme Court of Ohio upheld the denial of the VSSR application because the activation of the press had not been "operator intended" and, as such, the injury did not occur during the "operating cycle" as that term was defined in Aspinwall.
 {¶ 10} Finally, relator argues that Knowles overstates the scope and import of the magistrate's decision in arguing that there can never be a violation under the magistrate's reasoning because no worker would ever intend to operate the machine while a part of the worker's body was in the point of operation. Relator concedes that no operator would ever intend to do so (that is, no worker would intend to injure him- or herself) but reminds the court that the issue here is not whether Knowles intended to cycle the machine without removing her hands but, underAspinwall, whether she intended to cycle the machine and was subsequently injured due to the employer's violation of a specific safety requirement. Because the record in this case supports only the conclusion that Knowles did not intend to cycle the machine, relator argues, the commission abused its discretion in determining otherwise, and the requested writ of mandamus must issue in order to correct the abuse.
 {¶ 11} The determination of disputed facts is within the final jurisdiction of the commission, subject to correction in mandamus only upon a showing of an abuse of discretion. State ex rel. Allied WheelProducts, Inc. v. Indus. Comm. (1956), 166 Ohio St. 47, 1 O.O.2d 190, 139 N.E.2d 41. Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus will not lie. State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936.
 {¶ 12} In making a VSSR award, the commission must determine that a claimant's injury resulted from the employer's failure to comply with a specific safety requirement. Section 35, Article II, Ohio Constitution;State ex rel. Haines v. Indus. Comm. (1972), 29 Ohio St.2d 15, 58 O.O.2d 70, 278 N.E.2d 24. In the present case, we must resolve the issue whether there is "some evidence" to support the commission's determination that Knowles' injury was caused by relator's failure to comply with a specific safety requirement. For the reasons discussed in the magistrate's decision, the magistrate determined that no such evidence is present in the record.
 {¶ 13} Upon a copious review of the stipulated evidence presented by the parties, the magistrate's decision, respondents' objections and relator's response, and the relevant case law, we conclude that the magistrate correctly determined that the commission abused its discretion in granting the application for a VSSR award.
 {¶ 14} Dispositive of the issue in this case is the decision of the Supreme Court of Ohio in the case of State ex rel. Garza v. Indus. Comm.
(2002), 94 Ohio St.3d 397, 763 N.E.2d 174. In that case, the claimant was working with a pneumatic press equipped with infrared sensors located below the surface of the press' table and on either side of the press, which required the operator to use both hands to contact the sensors in order to activate the ram. Thus, theoretically, both of the operator's hands would be away from the zone of danger when the ram was activated. The injured worker in Garza was cleaning flashing from the machine when either a part of her body, or possibly a piece of her clothing, contacted the infrared sensors, activating the ram, which descended upon her arm. The commission denied her application for a VSSR award. The commission found, in reliance upon Aspinwall, that the injury did not occur during the machine's operating cycle because the operator had not intentionally activated the ram's descent.
 {¶ 15} The Supreme Court of Ohio agreed. Relying upon its previous holdings in State ex rel. Gentzler Tool Die Corp. v. Indus. Comm.
(1985), 18 Ohio St.3d 103, 18 OBR 137, 480 N.E.2d 397, and Aspinwall, the court reiterated that, "* * * `operating cycle' is confined to operator-intended press activation * * * [.]" Garza, supra, at 401. The court explained:
The phrase "during the operating cycle" is central to our dispute. It is a term that, although undefined in the safety code, has been extensively analyzed by this court. These cases can be difficult because of the simple truth exemplified by the claim before us: the press obviously cycled when the claimant's arm was in the danger zone or claimant would not have been hurt.
The claimant's position reflects this reasoning. The hidden danger in this approach, however, is that, in effect, it declares that because there was an injury there was by necessity a VSSR — i.e., someone was injured; therefore, the safety device was inadequate. * * *
Id. at 400.
 {¶ 16} We find the reasoning employed in Garza to be applicable here. In this case, the commission determined, as a factual matter, that Knowles inadvertently (that is, not intentionally) depressed the foot pedal while her hand was within the machine's danger zone. Though Knowles repeatedly stated that she did not depress the foot pedal, there is evidence in the record that demonstrates that the machine was not malfunctioning and there was no reason to believe that the machine cycled on its own. Thus, the commission could reasonably infer that Knowles unknowingly and inadvertently depressed the foot pedal while her hand was in the danger zone.
 {¶ 17} The fact that she depressed the pedal inadvertently establishes that she did not intend to effectuate ram descent at that time. Thus, under the definition of "operating cycle" embraced thus far by the Supreme Court of Ohio, Knowles' injury did not occur during the operating cycle of the machine, and therefore, her injury was not causally linked to relator's violation of the specific safety requirement at issue. When the commission imposed VSSR liability despite the fact that there is not "some evidence" in the record to support the conclusion that Knowles' injury occurred during the machine's operating cycle, it abused its discretion.
 {¶ 18} Knowles urges us to adopt a finely drawn distinction between activation that is not precipitated by a volitional act of the operator directed toward effectuating such activation, such as that which occurred in Garza, and activation precipitated by a volitional yet inadvertent act on the part of the operator that is more clearly directed toward the objective of ram descent. To date, however, the Supreme Court of Ohio has identified no such distinction, though it has had the opportunity to do so.
 {¶ 19} In Aspinwall, the commission and the court of appeals specifically found that the employer in that case had violated the applicable safety requirement to the extent that the worker's hands had
entered the danger zone. In Garza, too, the evidence clearly demonstrated that it was possible for an operator's hands to enter the danger zone during physical cycling of the machine. Moreover, in Garza, the injury occurred, as in the present case, not due to inexplicable ram descent (as was the case in Aspinwall) but due to the operator having physically precipitated ram movement. Yet, the Supreme Court made it clear in bothAspinwall and Garza that the imposition of VSSR liability requires more than the possibility of physical cycling of the machine while some part of the operator's body is in the danger zone. There must be a causal connection between the worker's injury and the violation of the specific safety requirement.
 {¶ 20} Here, pursuant to the plain language of Ohio Adm. Code4121:1-5-11(E), in order for VSSR liability to be properly imposed, Knowles' injury must have occurred as a direct and proximate result of her hands having entered the danger zone "during the operating cycle." In applying this same language, the court in Aspinwall and Garza strictly limited the definition of the term "operating cycle" to "operator-intended ram movement." We remain bound by the definition set forth in Aspinwall and reiterated just three years ago in Garza. We are unable to remedy any indistinction that might flow therefrom in this case, especially when we are presented with the sole issue of causation, which was likewise the only issue in the Aspinwall and Garza cases. Moreover, we do not perceive the existence of any factual distinction here that warrants a course of action other than strict adherence to the principle articulated in those cases.
 {¶ 21} For all of the foregoing reasons, we must overrule respondents' objections.
 {¶ 22} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of respondents' objections, we overrule the objections, and find that the magistrate made no error of fact or law. We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law therein. We grant the requested writ of mandamus and order the commission to vacate its order granting Knowles' application for a VSSR award, and to enter a new order denying that application.
Objections overruled; writ of mandamus granted.
Petree and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Advanced Metal Precision Products, : Relator, : v. : No. 04AP-95 Industrial Commission of Ohio : (REGULAR CALENDAR) and Gloria J. Knowles, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 21, 2004 Marshall Melhorn, LLC, David L. O'Connell and Thomas W. Palmer, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
Fell Marcus Co., LPA, and Lisa A. Grego, for respondent Gloria J. Knowles.
In Mandamus.
 {¶ 23} Relator, Advanced Metal Precision Products, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted the application of respondent Gloria J. Knowles ("claimant") and awarded her an additional award based upon the violation of a specific safety requirement ("VSSR"), and ordering the commission to find that claimant is not entitled to a VSSR award.
Findings of Fact:
 {¶ 24} 1. Claimant sustained a work-related injury on April 21, 2000, and her claim has been allowed for:
Fracture of distal phalanx hand open, right thumb; crushing injury finger, right thumb; open wound of finger, complicated, right thumb; amputation tip right thumb; loss of use of 1/2 right thumb; keloid scar, right; injury to digital nerve, right; causal-gia right thumb; adhesive capsulitis right shoulder; myofascial injury to cervical spine.
 {¶ 25} 2. At the time of her injury, claimant was operating the Haeger Press and described her injury as follows:
I was using a Peming machine to place Pems [screws] into sheet metal. I was told the metal parts were computer cabinets. I would place the part into the machine, line the pem up with a hole in the sheet metal, and hold the part in place while pressing down on the foot pedal to drive the pem into the metal. On the date of injury, I was trying to line up the pem when the machine suddenly cycled and crushed my thumb. There was no guard on the foot pedal and no guards or light curtains on the machine itself. I have been told the machine was made by Haeger and is Model #HP6-B.
 {¶ 26} 3. In her testimony given January 15, 2003, at pages 38-41, relator again indicated that she did not place her foot on the foot pedal.
 {¶ 27} 4. The Haeger Press machine is equipped with an electro-mechanical safety system featuring a pressure-sensing devise. The system was described by the Ohio Bureau of Workers' Compensation's investigator as follows:
According to the Operation and Maintenance Manual, "The Haeger Press is equipped with a very unique and reliable safety system. The upper Ram contains a Pressure Sensing Device within the Upper Tool Holder. This Sensing Device releases the downward pressure from the Ram if a non-conductive object is placed between the top and bottom Tool when the Press is in the conductive mode. The Ram actually comes down and touches the non-conductive object (such as the operator's finger or hand) with less than 2 oz. of pressure. The Ram returns to its upper position immediately and stops. The manual continues, "When working with non-conductive materials (G10 Epoxy Board or Anodized Aluminum) the Conductive/Non-Conductive Switch should be in the Non-Conductive Mode. The Safety System is still in effect, however the operation is different. In the Non-Conductive Mode the Ram comes down as normal but stops at first contact with any object. The operator must press the Foot Switch a second time in order to continue the downward travel of the Upper Ram."
 {¶ 28} 5. On April 4, 2002, claimant filed her application for a VSSR award. At the beginning of the July 2, 2003 hearing before a staff hearing officer ("SHO"), claimant's counsel specified that the VSSR application was based on an alleged violation of Ohio Adm. Code4121:1-5-11(E) which requires that every hydraulic press shall be guarded in such a way to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle.
 {¶ 29} 6. The SHO concluded that the machine's safety system did not meet the requirements of the code as follows:
The employer contends that the built-in safety system designed into this piece of equipment is sufficient to meet the criteria of a practice, method, or means providing a safe-guard which is equivalent in result to one of the types identified. This Staff Hearing Officer disagrees. This Staff Hearing Officer finds that, while the safe-guard in place, to be identified further later in this Order, may be a reliable safe guard, it is not a safe-guard that would prevent the injured worker's hands or fingers from entering the danger zone during the operating cycle. As such, it does not meet the definition of the Safety Requirements in Ohio Administrative Code 4121:1-5-11(E).
* * *
This Staff Hearing Officer finds that, this is a form of safe-guard, it does not prevent operator error or meet the prevention criteria of the regulation cited. It relies on an operator's instinct to remove their hand once the ram touches it and relies on the operator not hitting the foot switch for the second time. The safe-guard on this machine has a long-standing excellent history of safety, however, it in no way guards or prevents the operator's hands or fingers from being in the danger zone during the cycling process.
 {¶ 30} Thereafter, the SHO determined that claimant's injuries occurred during an operating cycle as follows:
The injury herein clearly occurred during an operating cycle. The testimony and the operating manual for the press clearly indicates that the non-conductive mode, the ram will come down once, touch the object and then it requires the second press at the foot switch for the ram to come down and actually insert the pem. The injured worker was not involved in cleaning the machine when it miscycled, there is no indication that the machine actually miscycled, the injured worker was not performing any other activity except the actual operating cycle of peming at the time of the injury. As a result, this Staff Hearing Officer finds there is no dispute that the provisions of the Safety Requirement as interpreted by, State ex rel. Gentzler Tool Die Corp., v.Industrial Commission (1985), 18 Ohio St. 3d 103, have not been met. TheGentzler Court indicated that the safety provision does not require that a power press operator's hands be guarded from ever entering the danger zone. Rather, it is only required that the operator's hands be guarded from entering the danger zone "during the machine's operating cycle". This Staff Hearing Officer finds no dispute that the injured worker was operating the machine in its operating cycle at the time of the injury. This Staff Hearing Officer also finds that the safety feature of the machine does not prevent the injured worker's hands or fingers from being in the danger zone during the operating cycle.
 {¶ 31} 7. Relator filed a motion for rehearing which was denied by order mailed November 19, 2003.
 {¶ 32} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 34} In regard to an application for an additional award for a VSSR, the claimant must establish that an applicable and specific safety requirement exists, which was in effect at the time of the injury, that the employer (relator herein) failed to comply with the requirement, and that the failure to comply was the cause of the injury in question. Stateex rel. Trydle v. Indus. Comm. (1972), 32 Ohio St.2d 257. The interpretation of a specific safety requirement is within the final jurisdiction of the commission. State ex rel. Berry v. Indus. Comm.
(1983), 4 Ohio St.3d 193. Because a VSSR award is a penalty, however, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. State ex rel. Burton v. Indus. Comm.
(1989), 46 Ohio St.3d 170. The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion test. Trydle, supra; State ex rel. A-F Industries v.Indus. Comm. (1986), 26 Ohio St.3d 136; State ex rel. Ish v. Indus.Comm. (1985), 19 Ohio St.3d 28.
 {¶ 35} For the reasons that follow, this magistrate concludes that the commission did abuse its discretion in ultimately making an award for a VSSR against the relator herein and in favor of the claimant.
 {¶ 36} The parties agreed that Ohio Adm. Code 4121:1-5-11(E) applied to the specific press in question. Ohio Adm. Code 4121:1-5-11(E) provides as follows:
(E) Hydraulic or pneumatic presses.
Every hydraulic or pneumatic (air-powered) press shall be constructed, or shall be guarded, to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle. Acceptable methods of guarding are:
(1) "Fixed barrier guard" — an enclosure to prevent hands or fingers from entering the danger zone;
(2) "Gate guard" — a movable gate operated with a tripping device to interpose a barrier between the operator and the danger zone and to remain closed until the down stroke has been completed;
(3) "Two-hand control" — an actuating device which requires the simultaneous use of both hands outside the danger zone during the entire closing cycle of the press;
(4) Pull guard — attached to hands or wrists and activated by closing of press so that movement of the ram will pull the operator's hands form the danger zone during the operating cycle;
(5) Restraint or hold-back guard — with attachments to the hands or wrists of the operator to prevent hands or fingers entering the danger zone during the operating cycle;
(6) Other practices, means or methods which will provide safeguards, preventing the hands or fingers of the operator from entering the danger zone during the operating cycle and which are equivalent in result to one of the types specified above.
 {¶ 37} Furthermore, it is undisputed that the safety features of this particular machine would have to fit under subsection (6) as it does not fit under subsections (1) through (5). As such, relator was required to show that their safeguarding method would prevent the hands or fingers of the operator from entering the danger zone during the operating cycle and must be equivalent in result to one of the types specified in subsections (1) through (5).
 {¶ 38} As described, the Haeger Press machine required the operator to physically place a screw on a sheet of metal with the operator's hand. While holding the screw, the operator depressed the foot pedal one time. This action brings the ram down to the top of the screw where the ram then stops. Thereafter, the operator is required to remove his/her hands from the danger zone, lift their foot off the foot pedal and depress their foot onto the foot petal a second time. This action causes the ram to complete its cycle.
 {¶ 39} Unlike the devices mentioned in subparagraph (1) through (5), the device utilized on this machine does not prevent the hands or fingers of the operator from entering the danger zone during the operating cycle in a manner equivalent to the above subsections. Specifically, as the SHO found, this safeguard method relies upon the operator's instinct to remove their hands once the ram touches it as well as the operator not hitting the foot pedal for a second time until they remove their hands. Although the safety record for these machines has been excellent, it is clear that this safeguarding method does not meet the requirements of Ohio Adm. Code 4121:1-5-11(E) and the SHO correctly determined that relator had violated this specific safety requirement.
 {¶ 40} Thereafter, the commission needed to determine whether or not claimant's injuries occurred "during the operating cycle." The SHO citedState ex rel. Gentzler Tool Die Corp. v. Indus. Comm. (1985),18 Ohio St.3d 103, and determined that claimant's injuries did occur during an "operating cycle." This magistrate finds that the commission misapplied Gentzler and the case law which has followed. Gentzler
involved the applicability of IC-5-08.03(A)(1) which required that presses be guarded to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle. In that case, the employee operated a two-stage punch press equipped with safety guards which prevented the operator's hands from entering the danger zone while the press was activated. Furthermore, only one person operated the machine during its normal use. Prior to the employee's injury, the press had been malfunctioning and the employee asked a co-worker for help to correct the problem. The employee began operating the press slowly so that her co-worker could identify and correct the problem. At one point, the employee ceased operation of the press and reached into the danger zone to adjust a poorly positioned part. The employee had stated that she did so without fear of danger because she knew the press would not be activated until she hit her foot pedal. Without her knowledge, at the time that her hand was in the danger zone, her co-worker manually activated the press and the employee's hand was severally injured.
 {¶ 41} The commission granted a VSSR award to the claimant and the employer ultimately brought a mandamus action. The Ohio Supreme Court concluded that the employee's injury did not occur during the operating cycle of the power press as there was no evidence indicating that the guards were effective during the operating cycle of the power press. The court concluded that the commission had abused its discretion.
 {¶ 42} Two cases have followed since Gentzler was determined. In Stateex rel. Aspinwall v. Indus. Comm. (1988), 40 Ohio St.3d 55, and State exrel. Garza v. Indus. Comm. (2002), 94 Ohio St.3d 397, the Ohio Supreme Court has specifically defined the phrase "during the operating cycle." In Aspinwall, the court concluded that the "commission's interpretation of `operating cycle' as operator-intended ram movement," was supported by a review of Ohio Adm. Code 4121:1-5-11(E) and the case law. Id. at 58. InAspinwall, the hydraulic press was operated when an employee would insert a helical side gear into the press and place a sleeve over the top. A bushing would then be placed on top of the sleeve and the operator would activate the ram with a spring-type lever, pressing the bushing down. After the ram cycle, the employee would reach in, take the sleeve off, flip the gear, and repeat the procedure with another sleeve and a double bushing. At the time of his accident, the employee had completed the first phase and reached in to take the sleeve off when the ram unexpectedly lowered and crushed his hand. The employee had argued that the term "operating cycle," which is not defined in the code, must be defined within the context of the machine, i.e., the physical cycling of the machine, completed when the ram ascends to its resting position. The commission had argued that the term "operating cycle" encompassed the entire part production process, i.e., the insertion of the piece through its final removal. The court agreed. The court concluded that the safety provisions do not require that a power press operator's hands be guarded from ever entering the danger zone. Instead, the provisions only require that the operator's hands be guarded from entering the danger zone during the machine's operating cycle. The court agreed with the commission's interpretation that "operating cycle" is confined to "operator-intended press activation." Gentzler, supra.
 {¶ 43} The court again considered the question in Garza. The press in that case was activated by activating dual sensors located on each side of the press and the ram came down and severed the light-weight plastic tube into three pieces. One of the pieces is discarded and the other two are used for the automotive part. The employee had to physically reach in with her hand to remove the parts. The dual buttons which activated the press were infrared and it was necessary to activate both buttons simultaneously in order to cause the ram of the press to come down. If the operator were to remove his/her fingers from the buttons, the ram would return to its original position near the upper portion of the press. On the date of her injury, scrap began piling up in the press. The employer reached in to remove the scrap when something, possibly her body or a loose shirt, contacted the infrared light beams that activated the sensor and caused the ram to descend on her arm. The commission determined that, pursuant to Aspinwall, a VSSR could not be awarded. In mandamus, the Ohio Supreme Court concluded that the phrase "during the operating cycle" was central to the dispute. After reviewing the case law, the court specifically noted the following difficulty posed by the cases and the factual situations presented therein:
* * * These cases can be difficult because of the simple truth exemplified by the claim before us: the press obviously cycled when the claimant's arm was in the danger zone or claimant would not have been hurt.
The claimant's position reflects this reasoning. The hidden danger in this approach, however, is that, in effect, it declares that because there was an injury there was by necessity a VSSR — i.e., someone was injured; therefore, the safety device was inadequate. This violates two workers' compensation tenets: (1) the commission determines the presence or absence of a violation and (2) all reasonable doubts as to a specific safety requirement's applicability must be resolved in the employer's favor. State ex rel. Burton v. Indus. Comm. (1989), 46 Ohio St.3d 170, 172,545 N.E.2d 1216, 1219. It also creates two practical problems, because it (1) renders the manufacturing process impossible by preventing claimant's hands from ever entering the danger zone and (2) conflicts with the safety code's enumeration of a "two-hand control" as an acceptable means of protection.
(Emphasis sic.) Id. at 400.
 {¶ 44} The court reviewed Aspinwall and Gentzler and concluded that the provisions of Ohio Adm. Code 4121:1-5-11(E) were "designed to work only when the employee deliberately removes his or her hands from the danger zone in order to press the two buttons. Since the code's authors deem this to be an acceptable method of protection during the `operating cycle,' then `operating cycle' can mean only a cycle that is operator intended." (Emphasis sic.) Id. at 401.
 {¶ 45} Applying Gentzler, Aspinwall, and Garza to the facts of the present case, this magistrate reaches the conclusion that the claimant's injuries did not occur during an "operating cycle" inasmuch as the claimant has maintained all along that she did not place her foot on the foot pedal a second time. As such, she did not intend for the machine to cycle. The commission accepted claimant's statement and concluded that, not only did the machine not miscycle, the SHO "concluded that the injured worker unknowingly stepped on the switch a second time causing the arm to come down and crush her right thumb."
 {¶ 46} Inasmuch as the Ohio Supreme Court has determined that "operating cycle" can only mean that the cycle is operative-intended, if the operator unknowingly triggers the machine, the operator has clearly not intended anything. As such, when the machine is triggered by someone other than the operator, an injury to the operator does not occur during the "operating cycle." See Gentzler, supra. Furthermore, when a properly guarded machine accidentally miscycles while the operator's hands are in the danger zone, the injury did not occur during the "operating cycle." See Aspinwall, supra. When the operator accidentally triggers the machine to cycle while the operator's hands are in the danger zone, the resulting injury did not occur during the "operating cycle." See Garza, supra. Likewise, in the present case, where the operator maintains that she did not depress the foot pedal a second time, the operator did not intend for the machine to cycle and the fact that she "unknowingly" depressed the foot pedal a second time and was injured, or injury did not occur during the "operating cycle" of the machine and her injuries were not the result of a VSSR.
 {¶ 47} Based on the foregoing, it is this magistrate's conclusion that while the commission did properly determine that the machine at issue was not properly guarded in accordance with Ohio Adm. Code 4121:1-5-11(E), the claimant's injuries did not occur "during an operating cycle" as required by the code and defined by the Ohio Supreme Court and, as such, the commission abused its discretion in granting the claimant an additional award for the violation of a specific safety requirement. As such, this court should grant relator's request and order the commission to vacate its order awarding claimant an additional award for the violation of a specific safety requirement.