THE STATE EX REL. ADVANCED METAL PRECISION PRODUCTS, APPELLEE,
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as *State ex rel. Advanced Metal Precision Prods. v. Indus. Comm.*, 111 Ohio St.3d 109, 2006-Ohio-5336.]

(No. 2005–1631—Submitted June 6, 2006—Decided November 1, 2006.)

Per Curiam.

{¶ 1} We are asked to revisit the definition ascribed to the term "operating cycle" as used in former Ohio Adm.Code 4121:1–5–11(E).[1] Upon review, we conclude that the definition merits a more expansive interpretation than used currently and hold that "operating cycle" includes both intentional and accidental press activation by the machine's operator.

{¶ 2} Appellee, Advanced Metal Precision Products, uses a Haeger press to affix fasteners onto flat or preformed metal assemblies. The press accommodates conductive and nonconductive materials, and its safety system adapts to either press setting.

{¶ 3} Instead of barrier guards or restraints between the operator's hands and the danger zone, the system relies on an elaborate pressure-sensing system contained in the upper tool holder. The upper tool holder is activated by depressing a covered foot pedal. When the press is running nonconductive material, the sensor releases the downward pressure from the ram. The ram descends and touches the object with under two ounces of pressure. The ram then returns to its upper position and stops. Only by pressing the foot pedal again will the ram descend with force and complete the assembly process. This process may be described as a "twice-pushed foot pedal system."

{¶ 4} According to appellant Industrial Commission of Ohio, the safety system had "a long-standing excellent history of safety." It effectively relied, however, on the operator's not hitting the foot pedal a second time before removing the hands from the danger zone. Appellant Gloria Knowles apparently pressed the

---

1. As of November 1, 2003, Ohio Adm.Code 4123:1–5–11 contains the provisions of former Ohio Adm.Code 4121:1–5–11.

foot pedal a second time by accident on April 21, 2000, when her hand was crushed as she adjusted a part.

{¶ 5} After a workers' compensation claim was allowed, Knowles alleged a violation of specific safety requirements ("VSSR"). The commission found a violation of former Ohio Adm.Code 4121:1–5–11(E)(6) (requiring employers to establish "practices, means or methods" that will prevent the hands or fingers of a hydraulic or pneumatic press operator from "entering the danger zone during the operating cycle"). The Court of Appeals for Franklin County, however, in mandamus, held that finding to be an abuse of discretion. Relying on *State ex rel. Aspinwall v. Indus. Comm.* (1988), 40 Ohio St.3d 55, 531 N.E.2d 681, and *State ex rel. Garza v. Indus. Comm.* (2002), 94 Ohio St.3d 397, 763 N.E.2d 174, cases that stated that the term "during the operating cycle" meant only during intended press activation, the court held that because the operator did not intend to activate the press, the injury did not occur during the press's operating cycle, and no VSSR occurred. A writ of mandamus followed, which vacated the award.

{¶ 6} This cause is now before this court on an appeal as of right. S.Ct.Prac.R. II(1)(A)(1).

{¶ 7} Former Ohio Adm.Code 4121:1–5–11(E) required that the operator's hands be kept from the danger zone "during the operating cycle." *Aspinwall* and *Garza* limited the phrase to intentional press activation. This definition is too restrictive.

{¶ 8} "Operating cycle" is not defined in the safety code, and the term defies easy interpretation judicially, for any workable definition balances the need for safety with the need for danger-zone accessibility. Because the danger zone is hazardous, the temptation is to say that the zone should be completely inaccessible. With certain types of manufacturing processes, inaccessibility is possible. Many manufacturing and assembly processes, however, require an employee's hands to, at some point, enter the danger zone. The reasons are many: part insertion or removal, part adjustment, and positioning of sleeves or molds. In this case, Knowles had to align a PEM (a screw-like fastener) with a hole on the bottom tooling.

{¶ 9} It is equally tempting to say that if a press is cycling when a press accident occurs, the press is operating and is therefore in an "operating cycle." *Garza*, citing *Aspinwall*, rejected this logic, holding:

{¶ 10} "The hidden danger in this approach, however, is that, in effect, it declares that because there was an injury there was *by necessity* a VSSR—*i.e.*, someone was injured; therefore, the safety device was inadequate. This violates two workers' compensation tenets: (1) the commission determines the presence or absence of a violation and (2) all reasonable doubts as to a specific safety requirement's applicability must be resolved in the employer's favor. It also

creates two practical problems, because it (1) renders the manufacturing process impossible by preventing claimant's hands from *ever* entering the danger zone and (2) conflicts with the safety code's enumeration of a 'two-hand control' as an acceptable means of protection." (Emphasis sic; citation omitted.) *Garza,* 94 Ohio St.3d at 400, 763 N.E.2d 174.

{¶ 11} From this analysis, the court reasoned that the "operating cycle" is limited to press cycling that is intentionally activated by the operator. Id. at 401, 763 N.E.2d 174. Therefore, VSSR liability is eliminated when the press (1) malfunctions without warning, *State ex rel. M.T.D. Prods., Inc. v. Stebbins* (1975), 43 Ohio St.2d 114, 118, 72 O.O.2d 63, 330 N.E.2d 904, (2) is activated by someone other than the operator, *State ex rel. Gentzler Tool & Die Corp. v. Indus. Comm.* (1985), 18 Ohio St.3d 103, 105, 18 OBR 137, 480 N.E.2d 397, or (3) is accidentally started by the operator. *Garza,* 94 Ohio St.3d at 401, 763 N.E.2d 174. Unfortunately, this last (and current) scenario conflicts with a basic workers' compensation principle: specific safety requirements are designed to protect employees " 'against their own negligence and folly as well as to provide them a safe place to work.' " *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 47, 544 N.E.2d 887, quoting *State ex rel. U.S. Steel Corp. v. Cook* (1983), 10 Ohio App.3d 183, 186, 10 OBR 254, 461 N.E.2d 916.

{¶ 12} Reviewing *Garza* four years later, we see flaws in its reasoning, as well as in the reasoning of *Aspinwall,* which underlies it. We had feared that defining "operating cycle" to include accidental operation would impose strict liability on employers and/or compromise the commission's discretion to find a VSSR in the appropriate case. These concerns were unwarranted. The commission can deny a VSSR if the safety device experienced a one-time failure or if the press was activated by someone other than the operator (effectively bypassing the safety device). *M.T.D. Prods.* and *Gentzler,* supra.

{¶ 13} Including accidental operation within the definition of "operating cycle" does not offend the principle of resolving reasonable doubt as to specific-safety-requirement applicability in the employer's favor. *Cotterman,* 46 Ohio St.3d at 47, 544 N.E.2d 887, leaves *no* doubt that specific safety requirements may cover injuries resulting from employees' negligence or inadvertence. It is not, therefore, legitimate to exclude accidents from the purview of specific safety requirements.

{¶ 14} The safety devices listed in former Ohio Adm.Code 4121:1–5–11(E) that anticipate some necessary insertion of the hands into the danger zone protect the hands from both accidental and intentional operator activation without compromising the assembly process. This includes the two-hand control cited so prominently in both *Aspinwall* and *Garza.*

{¶ 15} A two-hand control or tripping device is commonly composed of two separately placed buttons located outside the danger zone, which require continuous simultaneous depression by each hand to cycle the press. *Garza*, 94 Ohio St.3d at 401, 763 N.E.2d 174, reasoned:

{¶ 16} "This protection is designed to work only when the employee *deliberately* removes his or her hands from the danger zone in order to press the two buttons. Since the code's authors deemed this to be an acceptable method of protection during the 'operating cycle,' then 'operating cycle' can mean only a cycle that is operator-intended." (Emphasis sic.)

{¶ 17} *Garza* and *Aspinwall*, however, placed too much importance on the need for intentional conduct in the use of the two-hand control as an approved means of compliance. Rather than reading into the regulatory language regarding two-hand controls a legislative intent to confine "operating cycle" to intentional activity, the better course is to view the language as seeking to ensure that the press cannot cycle with the operator's hands in the danger zone. *Garza* states that the safety device is designed to work only when an employee deliberately removes his or her hands from the danger zone to make a part. Id. at 399, 763 N.E.2d 174. *Garza*, however, overlooks the fact that in requiring the operator to use both hands to press the dual activation buttons, the operator's hands are necessarily removed from the danger zone. Thus, a two-handed trip also forecloses accidental activation of the press with the operator's hands in the danger zone. To therefore say that a two-handed trip anticipates protection only when activation is deliberate is not correct.

{¶ 18} In light of these observations, we believe that the time has come to consider abandoning both *Aspinwall* and *Garza*, and to do so, we turn to *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, for guidance. *Galatis* authorizes us to depart from stare decisis and overrule a prior decision when "(1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." Id., paragraph one of the syllabus.

{¶ 19} All three elements of *Galatis* are satisfied. First, *Garza* and *Aspinwall* contradict the purpose of specific safety regulations by excluding certain injuries caused by negligence or inadvertence. Second, *Garza* and *Aspinwall* defy practical workability because they specifically exclude *accidental* injuries, although those are the very injuries covered by the Workers' Compensation Act. Finally, abandoning the precedent would not create an undue hardship on those who relied upon those cases. To the contrary, it would foster a safer work environment.

{¶ 20} Accordingly, we overrule *Garza* and *Aspinwall* and hold that the term "operating cycle" in former Ohio Adm.Code 4121:1–5–11(E) encompasses all operator-activated press activity, whether intentional or accidental. Therefore, the commission correctly found that Knowles's injury, caused by accidental press operation, occurred during the press's operating cycle. The question then remains as to whether the Haeger press safety system satisfied former Ohio Adm.Code 4121:1–5–11(E)(6), which states:

{¶ 21} "Acceptable methods of guarding are:

{¶ 22} "Other practices, means or methods which will provide safeguards, preventing the hands or fingers of the operator from entering the danger zone during the operating cycle and which are equivalent in result to one of the types specified above." [2]

{¶ 23} We defer to the commission's expertise and uphold its conclusion that the Haeger press safety system did not provide protection equivalent to the means specified in former Ohio Adm.Code 4121:1–5–11(E)(1) through (5). The twice-pushed foot-pedal safety system did not make activation impossible with hands in the danger zone, nor did it bar, remove, or otherwise restrict entry of the hands into the danger zone during the operating cycle. The finding of a VSSR in this case was, therefore, not an abuse of discretion.

{¶ 24} Accordingly, the judgment of the court of appeals is reversed.

Judgment reversed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

Marshall & Melhorn, L.L.C., Thomas W. Palmer, David L. O'Connell, and Roman Arce, for appellee.

Jim Petro, Attorney General, Dennis L. Hufstader, and Shawn W. Wollam, Assistant Attorneys General, for appellant Industrial Commission.

Fell & Marcus Co., L.P.A., and Lisa A. Grego, for appellant Gloria Knowles.

---

2. The other methods specifically enumerated in former Ohio Adm.Code 4121:1–5–11(E)(1) through (5) are a fixed barrier guard, a gate guard, a two-hand control, a pull guard, and a restraint or hold-back guard.